## Thomas F. Carey *vs.* The Evening Call Publishing Company.

### DECEMBER 3, 1948.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

474

FLYNN, C. J. This action in trespass on the case for libel is before us on the plaintiff's bill of exceptions to the ruling of a justice of the superior court sustaining the defendant's substantial demurrer to the declaration, and also on the defendant's bill of exceptions to another ruling denying its motion for the entry of judgment on the demurrer.

The declaration is in three counts, each of which in substance alleges that plaintiff is a citizen of this state and a long-time resident of the city of Woonsocket; that he has established himself in that community as a person of good reputation for honesty and uprightness; that the defendant is the owner and publisher of The Evening Call, a newspaper sold and circulated particularly in the city of Woonsocket; and that, in the issue of that paper on April 25, 1946, the defendant, maliciously intending to discredit the plaintiff and to hold him up to ridicule and disgrace in that community, published or caused to be published an alleged defamatory article. Such article is then set out in full in each count and the parts particularly relied on read as follows:

> " 'Bingo Widower' Says Shots Meant For Game Proprietor
>
> A 'confession' of the murder of John F. Letendre was received by mail today by The Woonsocket Call in an unsigned letter that said the writer 'killed the wrong man.' The right man, the letter states, was 'a tall, gray-haired man who runs a bingo game on Main Street.'

(The reputed operator of the bingo game on Main Street, located almost directly opposite the Blackstone Hotel which Letendre owned, is a resident of the same street as the murder victim, and like Letendre is a dapper dresser.) * * *

The letter was addressed to 'The Call, City' and was postmarked in Woonsocket at 8:30 last night. It was printed in capital letters with pencil, on brown wrapping paper and mailed in a plain white envelope with a three cent stamp.

The writer did not name the man he said he meant to kill, but complained his wife spends all his money at the 'bingo game.' * * *

The text of the letter follows:

I killed the wrong man, I wanted to get a tall, gray-haired man who runs that bingo game on Main Street. * * * When I saw on the paper the mayor would not close the place I decided to kill the old guy. I won't miss him the next time. All the money I give my wife and all the money my daughter gives her goes to that beano game. * * * I had nothing against the poor man. I wanted that other guy and I'll get him yet. That is the only way to stop my wife from ruining me. I set fire to that man's son's business last week and I'll get him if that place does not close. It's a bookie joint too. The callers and bookie work together. The Legion gets 100.00 out of 1400 a wk. I know. I belong to it. The Legion."

Each count also contains an innuendo stating or substantially indicating that the alleged defamatory publication by defendant described and was intended to describe the plaintiff as the person about whom the anonymous complaint had been made.

To each count of the declaration the defendant filed a demurrer based upon nine grounds. These may be summarized as claiming (1) that the alleged defamatory article does not name or otherwise identify the plaintiff so as to constitute actionable libel; (2) that the innuendoes are not justified by such article, or by such article and the other allegations of the declaration considered as a whole; and (3) that the declaration as a whole does not state a sufficient

cause of actionable libel in favor of this plaintiff against the defendant.

After a hearing a rescript was filed on June 8, 1948 sustaining the defendant's demurrer in substance and effect upon the grounds above summarized, but no permission was given to the plaintiff to amend his declaration. Accordingly, on June 9, 1948, he filed his notice of intention to prosecute a bill of exceptions, requested a transcript, and made a deposit therefor; and June 23, 1948 was fixed as the time for filing a transcript and allowing the bill of exceptions. However, notwithstanding the filing of plaintiff's notice of intention to prosecute a bill of exceptions to this court and the making of a deposit for a transcript in accordance with the statute, the defendant on June 12, 1948 filed a motion for the entry of judgment on the demurrer. Thereupon the plaintiff filed a motion to amend his declaration. On June 22, 1948 both of these motions were heard and denied by the justice of the superior court, apparently on the ground that the plaintiff's filing of notice to prosecute his exception to the ruling sustaining the defendant's demurrer virtually precluded further action by the court at that time.

In our opinion the defendant's motion for entry of judgment on the demurrer was properly denied. The ruling of the superior court sustaining the substantial demurrer was clearly a final decision that was reviewable in this court upon compliance with the statutory requirements concerning the filing of a bill of exceptions. *Davis* v. *Purington Co.,* 58 R. I. 482, and cases cited.

The plaintiff within seven days of the decision duly filed his notice of intention to prosecute a bill of exceptions and deposited the fee for a requested transcript as required by the statute. This interrupted temporarily the running of the time within which the decision otherwise would have matured into a judgment. Upon the filing of such notice and the making of the required deposit judgment was stayed until further order of the court. G. L. 1938, chap. 542, §5.

In the circumstances, there being no other default by the plaintiff in regard to the requirements of that statute, we are of the opinion that the case was not in order for entry of judgment at the time when defendant's motion therefor was filed or when it was heard in the superior court. The defendant's exception to the denial of its motion for entry of judgment on the demurrer is therefore overruled.

We are also of the opinion that there was no error in the ruling sustaining the defendant's demurrer to the declaration. The alleged defamatory article taken by itself is not fairly susceptible of the interpretation that it charged the plaintiff with operating a "bookie joint" in violation of G. L. 1938, chap. 612, §35, as he contends.

Nowhere is the plaintiff or any other person named in the published article. It is true that such article purports to describe the person about whom the complaint was made as "a tall, gray-haired man who runs a bingo game on Main Street"; and as "The reputed operator of the bingo game on Main Street, located almost directly opposite the Blackstone Hotel which Letendre owned, is a resident of the same street as the murder victim, and like Letendre is a dapper dresser"; and again by a reference: "I set fire to that man's son's business last week and I'll get him if that place does not close. It's a bookie joint too. The callers and bookie work together."

These descriptions, however, taken singly or together do not suggest in and by themselves that the alleged defamatory statements in the article were published of and concerning the plaintiff. Therefore some further allegations of fact elsewhere in the declaration must be found in order to state, as a matter of good pleading, sufficient cause of action in favor of this plaintiff.

But in no count of the declaration, in the inducement or colloquium, can we find allegations of fact which, if admitted and applied to the alleged defamatory article, would tend

to lead an average reader in the community where the article was circulated to identify the plaintiff as the person of and concerning whom the article was published. The plaintiff merely alleges in very general terms that he is a citizen, a resident of the city of Woonsocket, and a person of good reputation in that community. For all that appears in the inducement and colloquium of any count, the person described in the article might be wholly fictitious and in no way connected with, or possibly identifiable as, the plaintiff.

The plaintiff nowhere supplies this missing connection by proper allegations of facts, but seeks to identify himself as the person concerning whom the alleged defamatory article was published merely through the conclusions appearing in the innuendo of each count in his declaration. But it is well settled that where rules of common-law pleading prevail, as here, it is not the function of the innuendo in a declaration for libel to introduce new matter, or to supply allegations that are necessary to connect the plaintiff with the alleged defamatory article. Such connection, when not appearing on the face of the article itself, should appear by suitable allegations in the colloquium of the declaration. In the instant case the entire absence of such an allegation in either the inducement or colloquium is not cured by mere conclusions in the innuendo. See 1 Chitty, Pleading (16th Am. ed.) 520-525.

The plaintiff, however, is not required in the allegations of his declaration to exclude every person who might be associated with such descriptions, or to allege that he corresponds in fact to each and every description in the article. The defendant seems to contend that the decision of the superior court can be interpreted as requiring such extreme pleading. If that were so, we would not agree with such a holding because the rule of pleading in libel is not that strict. The result of such a requirement might make it next to impossible to state a cause of action even for a deliberate

libel, unless the plaintiff was expressly and correctly named. It is too well established to require citation of authority that actionable libel can be constituted by written or printed signs or descriptions, provided they are sufficient by themselves to identify the plaintiff as the one concerning whom the defamatory article was published. Where such identification, in the mind of an average reader in the community where the article is circulated, does not appear on the face of the publication, it must be supplied by other proper allegations of fact in an appropriate part of the declaration.

In our opinion the decision in the instant case was based primarily upon the ground that the alleged defamatory article by itself did not identify the plaintiff as the person of and concerning whom the article was published, and there was no proper allegation of fact elsewhere in the declaration whereby the plaintiff might reasonably be identified as the person of and concerning whom the alleged defamatory charges in the article were published.

Evidently the plaintiff, for purposes of good pleading in that respect, recognized this defect in his declaration. In argument before us he asserted that he desired to amend the declaration in accordance with his motion in the superior court, but that he was obliged to seek a review of the original ruling on the demurrer because the justice in his decision did not give him permission to amend, and later denied his motion to that effect. In the circumstances we are of the opinion that the case should be remitted to the superior court to permit the plaintiff, if he desires, to amend the declaration so that it will appear from suitable allegations of fact that the alleged defamatory article was published of and concerning him.

The plaintiff's and defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings in accordance with this opinion.

*Fred Israel,* for plaintiff.

*Higgins & Silverstein,* for defendant.