**RIVERHOUSE PUBLISHING COMPANY**

v.

**Sylvia PORTER, the Hall Syndicate, Inc.**

**Civ. A. No. 3705.**

United States District Court
D. Rhode Island.
July 15, 1968.

1

William G. Gilroy, Providence, R. I., for plaintiff.

Ronald R. Lagueux, Providence, R. I., for defendants.

## OPINION

PETTINE, District Judge.

The defendants have moved to dismiss the complaint pursuant to the provisions of Rule 12 of the F.R.Civ.P. for (1) lack of jurisdiction, (2) insufficiency of service of process and failure to state a claim. The court will first discuss the defendants' contention that the plaintiff has failed to state a claim.

The plaintiff in the instant cause, on November 4, 1965, was a Rhode Island corporation which had published a book entitled, "Leading Men In The United States of America."

The defendant, Sylvia Porter, on the date in question was the author of, and The Hall Syndicate, Inc. was the syndicator and distributor of the newspaper column entitled, "Your Money's Worth, 'Phoney Awards' Can Be Costly," which said article appeared in the Providence Journal, a newspaper published in the City of Providence, Rhode Island.

The article describes in general terms a nationwide problem concerning phony award schemes which have been the subject of complaints to Better Business Bureaus throughout the country and suggests rules to be followed in deciding whether or not a person should accept an award or honor. It relates to "schemes * * * flourishing throughout the United States" whereby the person is informed he has been granted an award or is offered to have his name listed in a biographical encyclopedia of "prominent leaders" which may have a "big catch in the deal—and a high price to be paid" in that it will be nothing more than an "embarrassingly empty and costly 'honor.'" In substance, it warns that such schemes are not placed upon the merits of the person but rather to obtain costly subscriptions.

The complaint alleges that the article published by the defendant included false, scandalous, malicious and defamatory statements of and concerning the plaintiff. It then accuses the defendant of publishing, writing and distributing libelous material reading,

" 'Phony Award' schemes are now flourishing throughout the United States * * *." "First, the award-granting concern may have minimum to zero prestige and qualifications for choosing award winners;" "Another promoter offers to list your name in a biographical encyclopedia of 'prominent leaders.' However, your 'prominence' depends directly on whether you're willing to commit yourself to pay for copies of the 'forthcoming' publication. One operator has sent more than 250,000 such solicitations to 'leading men' all over the U. S. in recent years, with an impressive list

of well-known companies to which the 'book' will be made available. What is meant is that attempts will be made to sell the publication to these companies;" "Hallmarks of phony award schemes are these: you, the prominent businessman, are expected to pay a fee in order to get the award; the source of the award is probably ill-qualified to grant such honors; criteria for the award are vague and meaningless."

The complaint further states that the foregoing was meant and intended to convey that the plaintiff was and is guilty of being a person who was conducting a "phony award scheme" in the publication of "Leading Men In The United States of America."

The question is whether or not this complaint is so deficient as to warrant the granting of a motion to dismiss. In this type of case, a dismissal is not justified unless it is clear and apparent to the court that from the allegations it cannot be deducted under any state of facts that the publication was of and concerning the plaintiff.

At common law in an action such as the one at issue, the pleadings had to set forth averments known as "inducement," the "colloquium" and the "innuendo." These were circumscribed to an extent as does not presently exist under modern practice. Under our present procedures, a complaint is sufficient if in any part of it facts are recited relative to the uttered words so as to make them impute to the plaintiff a defamatory charge.

However liberalized the present rules of pleading may be, the complaint must state a case upon which relief can be granted.

It is this court's opinion that it cannot be said the publication in question refers to this plaintiff because of the book it publishes. It does not mention the plaintiff by name either directly or indirectly, and the use of such words as "prominent leaders" and "leading men" cannot change this position.

**4**

The article does not identify the publisher of any book but rather attacks a scheme, addressed to persons of prominence who wish to be classified as such. The words are insufficient to induce readers of the newspaper to believe that it refers to the plaintiff and its publication. The court notes that the phrase, "leading men" in the publication is in quotations and that the same wording is in the title of the defendants' publication. The court finds this quite unimpressive, for the article has many phrases in quotation marks all directed to the type of person solicited as subscribers. The potential market is the gullible whose sensitive egos can easily be triggered by the flattery of being classified as "prominent leaders," "leading men," "success stories," "promote incentive and champion (of) the cause of U.S. free enterprise democracy."

■ An abundance of law has been cited which clearly points out that the article must refer to some ascertained or ascertainable person who must be the plaintiff.

"Defamatory words, in order to be actionable, must refer to some ascertained or ascertainable person, and that person must be plaintiff. If the words used really contain no reflection on any particular individual, no averment can make them defamatory." [1]

Giving the words their natural meaning and reading the article as a whole, the court feels that as a matter of law it is not susceptible of the construction urged by the plaintiff.[2]

■ The innuendo cannot cure the vagueness and uncertainty that exists, for its only function is to explain the meaning of words and apply them in the light of other averments in the declaration. It cannot introduce new matter, nor can it supply allegations that are necessary to connect the plaintiff with

---

1. 53 C.J.S. Libel and Slander § 11, see also 33 Am.Jur., Libel and Slander, section 89;

A statement that "a bank was loaned to death by its former cashier" was held not to refer to an ascertained or ascertainable person and was, therefore, demurrable. Helmicks v. Stevlingson, 212 Wis. 614, 250 N.W. 402, 91 A.L.R. 1158 (1933).

A statement in a newspaper article that a number of persons employed at a sanitarium, including part-time doctors who were arrested cases of tuberculosis, was held not to identify sufficiently a particular plaintiff who was one of four part-time doctors. Kassowitz v. Sentinel Co., 226 Wis. 468, 277 N.W. 177 (1938).

A publication in a magazine quoting a statement of an individual defendant that dozens of undesirables, including a bookmaker relative of the defendant, who was a horse racer in New Jersey, had been thrown out of racetracks was not libelous of the plaintiff who was a cousin of the individual defendant in the horseracing business and was, at the time of the publication of the article, in New Jersey. Lepman v. Everett, 7 Cir., 333 F.2d 154 (1964).

An article referring to a "parking lot racket" in Washington, D.C., was held to be too general to allow the operator of one of the lots to maintain a suit for libel. Service Parking Corp. v. Washington Times Co., 67 App.D.C. 351, 92 F.2d 502 (1937).

2. John v. Tribune Co., 24 Ill.2d 437, 181 N.E.2d 105 (1962); Brewer v. Hearst Pub. Co., 7 Cir., 185 F.2d 846 (1950); Crosby v. Time, Incorporated, 7 Cir., 254 F.2d 927 (1958); Ledger-Enquirer Co. v. Brown, 214 Ga. 422, 105 S.E.2d 229 (1958); Julian v. American Business Consultants, Inc., 2 N.Y.2d 1, 155 N.Y.S. 2d 1, 137 N.E.2d 1 (1956).

See also New York Times Co. v. Sullivan, 376 U.S. 254, 288–289, 84 S.Ct. 710, 11 L. Ed.2d 686, where, as the defendant points out, the evidence could not support the jury's findings that the alleged libelous statements referring to the policy were made "of and concerning plaintiff, city commissioner of public affairs," where (1) there was no reference to the plaintiff in the statement, either by name or official position, (2) the statements could not reasonably be read as accusing the plaintiff of personal involvement in the acts described therein, (3) the statements did not, on their face, make any oblique reference to plaintiff as an individual, and (4) none of plaintiff's witnesses suggested any basis for the belief that the plaintiff himself was attacked in the statement complained of.

the alleged defamatory article.[3] It cannot make the plaintiff's identity certain which is otherwise uncertain.

The plaintiff rightfully argues that the complaint should not be deemed insufficient because it is not clear beyond a reasonable doubt that it will be unable to prove its right to relief. In support of this position, it cites Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988; Leimer v. State Mutual Life Assur. Co., 8 Cir., 108 F.2d 302; Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865; Bragg v. Warwick Shoppers World, Inc. (R.I.) 227 A.2d 582, 584.[4]

This court readily accepts the clear holdings of the plaintiff's authorities. It is in the application of such law that it feels constrained to hold that the complaint does not set forth a cause of action in libel.

Applying the well settled principles of law in a libel action, the article is not defamatory of the plaintiff or any other person in the biographical encyclopedia publishing industry. The

plaintiff has failed to set forth a cause of action and it cannot defend its present position by arguing the liberalization of the rules of pleading. To withstand a motion to dismiss, the complaint upon its face must state a case of libel.[5]

This court finds the complaint to be defective in not stating a cause of action of and concerning the plaintiff. The defendants' motion to dismiss is granted.

Though this is dispositive of the case, the court will next consider the other issues raised by the defendants' motion.

### Lack of Jurisdiction

The bringing of the action in this District by the plaintiff must satisfy the so-called Rhode Island "minimum contact" statute.[6] There must be sufficient "minimum contacts" to subject a non-resident corporation or individual to suit within the District of Rhode Island.

We must start with International Shoe Co. v. State of Washington et al., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed.

3. Ogrodnick v. Providence Journal Co., 93 R.I. 316, 175 A.2d 289; Connery v. Kallian, 99 R.I. 60, 205 A.2d 587.
"It is too well established to require citation of authority that actionable libel can be constituted by written or printed signs or descriptions, provided they are sufficient by themselves to identify the plaintiff as the one concerning whom the defamatory article was published. Where such identification, in the mind of the average reader in the community where the article is circulated, does not appear on the face of the publication, it must be supplied by other proper allegations of fact in an appropriate part of the declaration." Carey v. Evening Call Publishing Co., 74 R.I. 473, 478, 62 A.2d 327, 330.

4. "Consonant with the fair-notice concept, no complaint will be deemed insufficient unless it is clear beyond a reasonable doubt that the plaintiff will be unable to prove his right to relief, * * * that is to say, unless it appears to a certainty that he will not be entitled to relief under any set of facts which

might be proved in support of his claim." Bragg v. Warwick Shoppers World, Inc., supra.

5. Pond v. General Electric Company, 9 Cir., 256 F.2d 824, cert. denied 358 U.S. 818, 79 S.Ct. 30, 3 L.Ed.2d 60.

6. "Jurisdiction over foreign corporations and over non-resident individuals, partnerships, or associations.—Every foreign corporation, every individual not a resident of this state or his executor or administrator, and every partnership or association, composed of any person or persons, not such residents, that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such foreign corporations and such nonresident individuals or their executors or administrators, and such partnerships or associations amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States."
Rhode Island General Laws, 1956, Section 9-5-33, as amended.

95 (1945). The court, 326 U.S. at page 316, 66 S.Ct. at page 158, stated:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

In enacting the minimum contact statute, Section 9-5-33, Rhode Island chose to exercise jurisdiction up to the constitutional limitations. Del Sesto v. Trans-World Airlines, Inc. (D.C.R.I. 1962) 201 F.Supp. 879.

"There is no general standard as to what constitutes 'sufficient contacts' with the forum and the material factor is 'the quality and the nature of the corporate activity, rather than mere quantity.' " Shealy v. Challenger Manufacturing Company (W.D. S.C.1961) 198 F.Supp. 151, 153 affirmed 4 Cir., 304 F.2d 102, 108 (1962)

In McGee v. International Life Insurance Company, 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, we find the following significant language:

"Since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Court decided that 'due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " "Id., 326 U.S. at page 316, 66 S.Ct. 154 at page 158."

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years."

In Rhode Island, the Judicial Council, which recommended the adoption of the Act, stated its purpose in the following language:

"It is the purpose of the proposed act to make full use of the jurisdiction permitted by these recent decisions and to direct that the Rhode Island Courts hold non-residents amenable to suit in every case except those where the due process of the Federal constitution interferes."
Twenty-First Report of the Judicial Council to the Governor, March, 1960 pp 8, 9.

It is clear that there are no specific guidelines as to what constitutes "minimum contact" with the forum state. It is also clear that this issue must be decided upon a case to case basis and that the only thing that the

due process clause demands is that there be such contacts with the state of the forum that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

Whether or not the defendants have, in fact, had sufficient minimum contact with the state of Rhode Island to subject them to service of process and thus amenable to suit, requires an examination of the affidavits filed with this motion.

The affidavit of Sylvia Porter avers that the Providence Journal is not her agent and that she has no contractual relations with it. It clearly discloses that she has no contact with Rhode Island. Her column is syndicated by The Hall Syndicate, Inc. pursuant to a written agreement and appears in many newspapers throughout the country, including the Providence Journal. Any contract made with the Providence Journal was made by or through The Hall Syndicate, Inc. The affidavit further sets forth that she has never transacted business nor performed any work in Rhode Island, either in connection with the preparation of her column or in connection with any other business; she has never resided in this state and except for one visit in 1951 as the recipient of an honorary degree, she has never visited this state.

The plaintiff concedes these facts in its argument to the court but states we must look to the relation of The Hall Syndicate, Inc. and Sylvia Porter. It also points out that a full page ad appearing on September 3, 1967 in a regular section of the Providence Journal carrying a picture of the columnist at her typewriter and reciting among other things, "You'll find her helping you with your business or family financial problems," offers the only conclusion that she is advertising her product through the Providence Journal. Whether or not this argument has merit need not be considered, for there are no facts justifying such a conclusion. On the contrary, an evaluation of all the facts infers that such ad was the independent act of the Providence Journal.

In this court's opinion, plaintiff's argument is not persuasive. From the uncontradicted facts, it must be concluded she has no contact with the State of Rhode Island. Her only connection with it is that the product of her labors—a newspaper column—appears on a syndicated basis in the Providence Journal. This constitutes an insufficient relationship with the State of Rhode Island to permit the maintenance of a suit against her in this jurisdiction.

There is no showing that Sylvia Porter, by virtue of her contracts with The Hall Syndicate, Inc., had retained or exercised any control over the publication of her column. Nowhere in the evidence do we find that she, in any way, personally transacted any business in this state.

It is just as true in this case as it was in DeCosta v. Columbia Broadcasting System, Inc. et al. C.A. No. 3130 (D.C.R.I.1964) wherein this court stated, "In my judgment this case is clearly distinguishable from that of Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co., 1962, 1 Cir., 304 F.2d 915, where the court found that the non-resident or foreign defendant corporation exercised such a degree of control and leverage over the distributor of its products in New Hampshire as to make it reasonable that it should be subject to service of process in New Hampshire."

In the judgment of this court, it would be a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution to allow this suit to be maintained against Sylvia Porter.[7] To do so would offend

7. "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does

"traditional notions of fair play and substantial justice." Accordingly, the motion of the defendant, Sylvia Porter, to dismiss the complaint as to her for want of jurisdiction must be and is granted.

As to the defendant, The Hall Syndicate, Inc., the affidavit shows it is incorporated in the State of New York with its principal office in New York City; it is in the business of syndicating and distributing comic features and columns to various newspapers within the United States; its relationship with the Providence Journal is purely a contractual one of servicing the Journal with certain features recited in its contracts; there is no relationship of agency, employment or master and servant between them; the Providence Journal is not an employee, agent or servant of the defendant, The Hall Syndicate, Inc. is not qualified to do business in Rhode Island and does not do business in the State.

The full extent of its physical activity within the State is solely that on two or three occasions during a calendar year, a salesman of the syndicate may call upon some of the editors of newspapers within the State to display to them the various features which the syndicate may be offering for newspaper publication. It has no office, office personnel, employees or agents of any kind within Rhode Island, nor does it maintain any banking facilities or have a telephone listing. In addition to the Providence Journal, it services four other publications in Rhode Island.

The plaintiff argues this is sufficient minimum contact, concluding that it establishes a regular system of having salesmen call to sell the features and keep the businesses in this area cognizant of the latest developments that are available. The plaintiff further points out that as many as twenty features are sold.

The court finds this argument unimpressive. From the affidavit, it is clear a buyer-seller relationship exists and that there is no agency as is alleged in the complaint.

The contracts for the various features annexed to the motion show they are made in New York and that the only connection The Hall Syndicate, Inc. has with Rhode Island is that salesmen come into the State two or three times a year. In this court's judgment, it can hardly be said this is sufficient minimum contact to authorize a suit in Rhode Island not growing out of the relationship of the salesmen in the State.[8]

The United States Supreme Court did not intend through its decision in the International Shoe case to do away with established concepts of jurisdiction.[9]

---

not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." International Shoe Co. v. State of Washington et al., supra, 326 U.S. at page 319, 66 S.Ct. at page 160.

8. " * * * it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action *unconnected* with the activities there." International Shoe Co. v. State of Washington et al., supra, at 317, 66 S.Ct. at 159. (emphasis added)

9. "But it is a mistake to assume that this trend (established by International Shoe) heralds the eventual demise of all restrictions on the personal jurisdiction of state courts (citations omitted). These restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However *minimal* the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283.

In determining the question whether process has been satisfied, it is no easy task to do total justice to a qualitative analysis of the defendants' local activities. International Shoe Co. v. State of Washington et al., supra, at page 319, 66 S.Ct. at page 160 tells us it turns on the "* * * quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." If the salesmen had committed a tort while in Rhode Island, there might be some ground for saying a suit could arise out of that tort against The Hall Syndicate, Inc. in Rhode Island but here the suit is not based on any activity of the salesman in Rhode Island. It is based on articles which appeared in the Providence Journal.

Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co., supra, is clear precedent that a non-resident or foreign corporation must exercise such control and leverage over the distributor of its products as to make it reasonable that it should be subject to service of process in the foreign state. Analogous cases have been decided in other circuits.[10]

In my opinion, the mere solicitation of business in this state by salesmen of the foreign corporation does not subject it to the jurisdiction of this court.[11] It is the quality and nature of the activity in Rhode Island which the court finds significant. It is nothing more or less than a contractual relationship—a naked buyer and seller relationship devoid of any duties or responsibilities within this foreign state.

It is the judgment of this court that "traditional notions of fair play and substantial justice" dictate that The Hall Syndicate, Inc. should not be subjected to suit in this jurisdiction. The motion to dismiss the complaint as to it for want of jurisdiction must be and is granted.

*Insufficiency of Service of Process*

The suit in question was brought against the defendants without service of process against them. Service was made on the Providence Journal through its attorney for service of process on the theory that the Providence Journal was the agent or servant of the defendants. No service was made on the defendants personally by mail or by publication.

Suffice it to say that since the Providence Journal was not an agent for Sylvia Porter, service as to her was insufficient.[12]

As to The Hall Syndicate, Inc., since the Providence Journal was not its agent of any kind, service here too was insufficient.[13]

The burden of proving jurisdictional facts is on the plaintiff and this is not satisfied by mere conclusory statements that one corporation was the agent of the defendants.[14]

This court has concluded that in view of the affidavits filed by Sylvia Porter and The Hall Syndicate, Inc., it is apparent that the Providence Journal was not an agent of the defendants; therefore, service of process upon it was insufficient service on the defendants.

Finally, the court must consider Subsection (7) of Rule 4(d) F.R.Civ.P. which provides that service would be sufficient if made in the manner prescribed by the law of the state in which

10. Insull v. New York World-Telegram Corporation, 7 Cir., 273 F.2d 166; Schmidt v. Esquire, Inc., 7 Cir., 210 F.2d 908 cert. denied 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646; Gayle v. Magazine Management Company (D.C.) 153 F.Supp. 861.

11. Schmidt v. Esquire, Inc., supra.

12. Rule 4(d) F.R.Civ.P. subsection (1).

13. Rule 4(d) F.R.Civ.P. subsection (3).

14. Aro Manufacturing Co. v. Automobile Body Research Corporation, 1 Cir., 352 F.2d 400 cert. denied 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210.

the District Court is held. Rule 4(d) of the Rhode Island Rules of Civil Procedure[15] is almost identical to the Federal Rule 4(d). Clearly, there was no compliance.

Rhode Island Rule 4(e) prescribes the method of making service outside the state on an individual or corporation but requires service by mailing or by a disinterested person outside the state.[16] This was not done.

 Since there has also been a failure to satisfy the above cited sections of the Rhode Island Rules of Civil Procedure, the action must be and is dismissed because of improper and insufficient service of process.

15. "(d) Summons: Personal Service. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

(1) Upon an individual other than an incompetent person by delivering a copy of the summons and complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process, provided that if the agent is one designated by statute to receive service, such further notice as the statute requires shall be given.

(2) Upon a person for whom a guardian or conservator has been appointed by serving copies of the summons and complaint upon such guardian or conservator and upon the incompetent person in the manner provided in paragraph (1) of this subdivision.

(3) Upon a private corporation, domestic or foreign, by delivering a copy of the summons and complaint to an officer, a managing or general agent, or by leaving a copy of the summons and complaint at an office of the corporation with a person employed therein, or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process, provided that if the agent is one designated by statute to receive service, such further notice as the statute requires shall be given.

(4) Upon the state by delivering a copy of the summons and complaint to the attorney general or an assistant attorney general.

(5) Upon a public corporation, body, or authority by delivering a copy of the summons and complaint to any officer, director, or manager thereof."

16. "(e) Service Ouside State: Personal Jurisdiction. When an individual or a foreign corporation is subject to the jurisdiction of the courts of the state, service of process may be made outside the state as follows:

(1) Upon an individual by delivery of a copy of the summons and complaint to him personally by any disinterested person, or by mailing a copy of the summons and complaint to him by registered or certified mail, return receipt requested, or by any other method ordered by the court to give such individual notice of the action and sufficient time to prepare any defense thereto.

(2) Upon a foreign corporation by delivery of a copy of the summons and complaint by any disinterested person to the president, secretary, or treasurer of such corporation or to any agent or attorney for service of process designated by the corporation in the state of incorporation, or by mailing a copy of the summons and complaint to any such officer or agent or to the corporation at its business address designated in the state of incorporation by registered or certified mail, return receipt requested, or by any other method ordered by the court to give such corporation notice of the action and sufficient time to prepare any defense thereto."