**ATLANTIC TUBING & RUBBER COMPANY**

v.

**INTERNATIONAL ENGRAVING COMPANY.**

**Civ. A. No. 5142.**

United States District Court,
D. Rhode Island.

Sept. 21, 1973.

George M. Vetter, Jr., Robert A. Lusardi, Providence, R. I., for plaintiff.

Thomas C. Angelone, Providence, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

This is a products liability action based on theories of negligence, breach of warranty, and breach of contract for damages resulting from a fire which ignited at plaintiff's plant in Cranston, Rhode Island when an embossing roll manufactured by the defendant allegedly malfunctioned. The plaintiff is a corporation incorporated under the laws of the State of Rhode Island and having its principal place of business in the State of Rhode Island, while the defendant manufacturer is incorporated under the laws of the State of New Jersey and having as its principal place of business the State of New Jersey. Jurisdiction is alleged upon diversity of citizenship and an amount in controversy exceeding $10,000, 28 U.S.C. § 1332.

The defendant has moved to dismiss the complaint pursuant to the provisions of Rule 12(b)(2) of the Fed.R.Civ.P. claiming that this Court lacks in personam jurisdiction over the defendant.

## FACTS

In 1965 the defendant, International Engraving Company, contracted, upon unsolicited request by telephone of the plaintiff, to manufacture and sell to the plaintiff for $1,566 an embossing roll for use in plaintiff's Rhode Island plant. On March 25, 1972, plaintiff charges that this embossing roll failed causing extensive damages to its plant.

The defendant asserts that it maintains no sales office in Rhode Island, employs no agent located in Rhode Island, and does no advertising or soliciting of business in Rhode Island. Further, the defendant maintains that between 1967 and 1971, its total sales in Rhode Island amounted to less than $9,000 and that the sale to Atlantic Tubing which is the subject matter of this controversy was its sole contact with Rhode Island in 1965. However, the 1965 sale to Atlantic Tubing & Rubber Company is not defendant's sole contractual relationship with this specific

Rhode Island plaintiff; the defendant has continued to make sales to the plaintiff and all but $3,600 of its total sales to Rhode Island since 1967 have been made to plaintiff. Also, while defendant's salesman has made only one visit to Rhode Island during this period, he did visit the plaintiff's plant on this trip. Since 1965, International Engraving's gross sales have averaged approximately $1,000,000 per year.

## IN PERSONAM JURISDICTION

The limitations on in personam jurisdiction over a non-resident individual or corporation are twofold. The establishment of "minimum contacts" by the non-resident with the forum state must be in accordance with both federal constitutional limitations and with the law of the state in which the court sits. Westphal v. Stone Manufacturing Company, 305 F.Supp. 1187, 1190 (D.R.I. 1970).

Sec. 9–5–33, Rhode Island General Laws (1956), as amended, provides the statutory "long arm" jurisdictional basis for the courts of Rhode Island. It states:

"9–5–33. Jurisdiction over foreign corporations and over nonresident individuals, partnerships, or associations. —Every foreign corporation, every individual not a resident of this state or his executor or administrator, and every partnership or association, composed of any person or persons, not such residents, that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such foreign corporations and such nonresident individuals or their executors or administrators, and such partnerships or associations amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States."

This Court has consistently held that "[f]rom the plain language of the stat-ute it will be seen that the legislature of Rhode Island has chosen to exercise jurisdiction over foreign corporations up to the constitutional limitations." Del-Sesto v. Trans-World-Airlines, Inc., 201 F.Supp. 879 (D.R.I.1962); Scott Brass, Inc. v. Wire and Metal Specialties Corporation, 344 F.Supp. 711, 713 (D.R.I 1972); Westphal v. Stone Manufacturing Company, *supra*; Forsythe v. Cohen, 305 F.Supp. 1194, 1196 (D.R.I.1969). Supporting this position, the Rhode Island Supreme Court in Conn v. ITT Aetna Finance Co., et al., 105 R.I. 397, 252 A.2d 184 (1969) wrote:

"* * * That act made foreign corporations and nonresidents individuals having the necessary 'minimum contacts' with this state amenable to the jurisdiction of our courts subject only to whatever limitations might be imposed by the constitution or laws of the United States; in substance and in effect, it empowers our courts * * * 'to exercise jurisdiction over foreign corporations up to the constitutional limitation.' "

Therefore, a defendant whose contacts with the State of Rhode Island are sufficient to satisfy the due process requirements of the Fourteenth Amendment to the federal constitution is subject to the jurisdiction of the courts of Rhode Island.

Until International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), personal jurisdiction of courts to render in personam judgments required a party's presence within the territorial jurisdiction of the court. However, the court in *International Shoe* stated the test as follows:

" . . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "
326 U.S. at 316, 66 S.Ct. at 158.

The United States Supreme Court subsequently elaborated on this test in McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957) when in upholding personal jurisdiction over a defendant foreign insurance company in an action arising from a single life insurance policy purchased by a resident of the state, the court noted the clearly discernible trend "toward expanding the permissible scope of state jurisdiction over foreign corporations" in light of the "fundamental transformation of our national economy over the years."

However, the court in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) seemed to retrench and warned that this trend had not obliterated judicial respect for state boundary lines. The Court said:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. . . ."

*Id.* at 253, 78 S.Ct. at 1240.

■ As this Court wrote in Riverhouse Publishing Co. v. Porter, 287 F. Supp. 1, 9 (D.R.I.1968):

> ". . . the mere solicitation of business in this state by salesmen of the foreign corporation does not subject it to the jurisdiction of this court. It is the quality and nature of the activity in Rhode Island which the court finds significant."

However, what quantity and quality of contacts are necessary cannot be determined by any formula, but must be "worked out with reference to the facts of a particular case" taking into account "a multitude of various factors as they are presented." Westphal v. Stone Manufacturing Company, *supra*; Riverhouse Publishing Company v. Porter *supra*. Nonetheless, the First Circuit has recently enunciated in Whittaker Corporation v. United Aircraft Corporation, 482 F.2d 1079 (1973) a number of factors which must be considered. They include the nature and the purpose of the contacts, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum, and the convenience and fairness to the parties. Analysis of this problem according to these guidelines is appropriate.

■ In *Whittaker,* the First Circuit decided that one who does no more than enter into a single manufacturing agreement to purchase from a resident of the forum state has insufficient contact with the forum state to satisfy minimum due process requirements. Correspondingly, this Court in Scott Brass v. Wire and Metal Specialties Corporation, 344 F.Supp. 711 (D.R.I.1972) and Leesona Corporation v. Concordia Mfg. Company, 312 F.Supp. 392 (D.R.I.1970) exercised jurisdiction after a finding of "substantial business activity between the Rhode Island plaintiff and the defendant." However, the nature of the contact involved in *Scott Brass, Leesona,* and *Whittaker* is substantially different from that before the Court today. None involved a products liability cause of action. Each case revolved around a simple breach of contract. This case presents the situation where a tort has been committed within the forum state [see Gray v. American Radiator and Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969)] as a result of an allegedly defective product manufactured by the defendant with full knowledge that it was to be used in the State of Rhode Island. As this Court noted in both Westphal v. Stone Manufacturing Co., *supra,* and Samson Cordage Works v. Wellington Pure Mills, Inc., 303 F. Supp. 155 (D.R.I.1969), the situs of a tort is an important factor in deciding

jurisdictional questions. Clearly, a state has a strong interest in preventing its citizens from physical and property damage from tortious action committed within the state. However, in both *Leesona* and *Scott Brass* the defendant had explicitly solicited business from the state and conducted systematic and substantial business in Rhode Island; therefore, the court was not forced to decide the jurisdictional issue in the absence of either of these factors. Consequently, these decisions are dispositive only to the extent that they recognize that the "totality of the contacts" both "quantitatively and qualitatively" must be such as to "not offend traditional notions of fair play and justice."

This case presents a situation involving a relatively isolated event or transaction. Without doubt the most significant developments in modern thinking and practice respecting jurisdiction concern the increasing acceptance of specific jurisdiction based on isolated events or episodes.[1] Furthermore, the comments to § 37 of the Restatement Second of the Conflict of Laws concludes that a state may "exercise judicial jurisdiction over an individual who has caused effects in the state by an act done outside the state as to causes of action arising from these effects if the individual had reason to foresee that the act would have effects within the state and the relationship of both the plaintiff and the defendant are sufficient to make the exercise of jurisdiction reasonable."

■ This Court recognizes that a corporation may be constitutionally amenable to jurisdiction in a tort action even if it has carried on only isolated or sporadic activity within the forum state, so long as the alleged tort grew out of that activity. Several courts, beginning with Gray v. American Radiator, *supra,* have dealt specifically with tortious injury resulting from defectively manufactured products and a comparison is useful. In *Gray*, an Illinois resident was injured when a water heater manufactured by the defendant and originally sold to another independent foreign middle man exploded after purchase and placement in Illinois. Without any detailed discussion of defendant's contacts, the court assumed that "it is a reasonable inference that [the defendant's] commercial transactions like those of other manufacturers, result in substantial use and consumption in this state." The court distinguished the requirement of Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 that the business of the foreign corporation in the forum state be of "sufficiently substantial nature" as applying particularly to cases where the cause of action arose from activities distinct from its conduct within the state. Instead, the Supreme Court of Illinois decided that the Hanson v. Denckla test is met where a corporation elects to sell its products for ultimate use in another state.

■ Unlike *American Radiator*, International Engraving did more than simply put its product into the stream of commerce uncertain as to its eventual destiny. International Engraving specifically and knowingly contracted to manufacture, sell, and ship its product to the forum state. *American Radiator* clearly bases its decision on contemporary notions of "fairness and justice." While it may be argued that *American Radiator* states only that substantial contacts will be presumed if the defendant is a mass producer whose goods regularly flow in interstate commerce [Liberty Mutual Insurance Company v. American Pecco Corporation, 334 F. Supp. 522, 524 (D.D.C.1971)], the better view is that from *American Radiator* has been developed the test that due process is met if it is foreseeable that one's products may ultimately come to rest in a particular state and may poten-

1. Trautman and vonMehren, "Jurisdiction to Adjudicate: A Suggested Analysis," 79 Harv.L.Rev. 1121, 1148 (1966). McGee v. International Life Insurance Company, *supra.*

tially cause injury therein. A series of recent federal decisions [2] have subsequently held that the foreseeability requirement is satisfied when a manufacturer had actual knowledge of the destiny of his product without reference to a need to assume additional substantial contacts.

In Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969), a British corporation whose sole enunciated contact with the state of Hawaii was the presence of coach bodies in Hawaii manufactured by Duple with knowledge of their eventual destination was held to be within the jurisdiction of the State of Hawaii for injuries relating to the malfunctioning of Duple's product. Duple claimed no other contacts with the State of Hawaii other than this single contract. The court wrote:

> "We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade."

417 F.2d at 235.

Similarly, the Ninth Circuit granted jurisdiction to the State of Alaska over one defendant who supplied materials to a contractor knowing that they would be used in the construction of a building in Alaska and over another foreign defendant who simply provided designs for use in the same building. Jones Enterprises, Inc. v. Atlas Service Corporation, 442 F.2d 1136 (9th Cir. 1971). The court

declared that the existence of an effect in the forum state cannot without more create in personam jurisdiction in that state but "when the activities complained of create a substantial risk of injury in [that] state" and "the defendant purposely sets his product or his designs into the stream of commerce, knowing or having reason to know that they will reach the forum state," due process is met. On the other hand, the same court denied jurisdiction to an Idaho court over a South Dakota physician who gave a patient a prescription which was eventually filled in Idaho and harmed the plaintiff in Idaho because the court felt that in the case of personal services, the place where the services are rendered is the critical location. Further, the court felt that public policy would be ill served if a doctor could be forced to defend wherever a patient may travel. Wright v. Yackley, 459 F.2d 287 (9th Cir. 1972).

■ These cases illustrate the need for individual analysis in order to satisfy "traditional notions of fair play and justice." The court has the flexibility to distinguish between the local dealer who deals primarily on an intrastate basis or who additionally sells to individuals passing through his residence and a company who regularly introduces his products into interstate traffic. In effect, this may amount to little more than a restated utilization of the foreseeability test. The court in In-Flight Devices Corporation v. Van Dusen Air, Inc., 466 F.2d 220, 233–234 (6th Cir. 1972) stated the reality of the situation accurately:

> "The existence of substantial interstate business in general cannot substitute for some direct contacts with the forum state . . . but . . . the general interstate involvement of the defendant is suggestive of the latter's expectation that it

2. Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969) ; Leasco Data Processing Equipment Company v. Maxwell, 468 F.2d 1326 (2d Cir. 1972) ; Jones Enterprises, Inc. v. Atlas Service Corporation, 442

F.2d 1136 (9th Cir. 1971) ; Liberty Mutual Insurance Co. v. American Pecco Corporation, *supra*; Keckler v. Brookwood Country Club, 248 F.Supp. 645, 649 (N.D.Ill.1965).

may be involved in litigation far from its home base."

The court in *Duple Motor Bodies, Inc., supra,* recognized the need for limiting jurisdiction to those defendants for whom it is clearly foreseeable as a result of its business transactions that injury from a potentially defective product would occur in the forum state. Citing Keckler v. Brookwood Country Club, 248 F.Supp. 645, 649 (N.D.Ill.1965), the court stated:

"When a manufacturer voluntarily chooses to sell his product in a way in which it will be . . . transported from state to state, he cannot reasonably claim to be surprised at being held to answer in any state for damages the product causes."

However, the knowing and intentional manufacture and sale by defendant of its product for use in the forum state satisfied this test in *Duple Motor Bodies, Inc.* without discussion of the "national" character of the defendant's business. The Second Circuit echoed these views last year when it noted in Leasco Data Processing Equipment Corporation v. Maxwell, 468 F.2d 1326, footnote 11 (2d Cir. 1972) that in the area of products liability for defective products,

"courts have been careful to distinguish the test for liability in tort from that for personal jurisdiction"

stating:

"[I]t is clear that activity in interstate commerce must be sufficiently extensive and regular to make this possibility a foreseeable risk of the business."

As in *Duple Motor Bodies, Inc.,* the court indicated in *Leasco* that the test was clearly met where a tortfeasor is specifically aware that his product might cause injury in the very state seeking to subject him to suit.[3] Thus,

the flexibility of the court to decide personal jurisdiction on a case by case basis where jurisdiction is related to isolated or sporadic activity is an absolute necessity to satisfy due process requirements.

In the present action, the defendant by express contract with the Rhode Island plaintiff knowingly and intentionally manufactured its product for use in the State of Rhode Island. Since the transaction in question, the defendant has shipped additional equipment to the plaintiff in Rhode Island according to several subsequent contracts. There is no doubt of the defendant's awareness of the destination of the equipment. As the court in In-Flight Devices Corporation v. Van Dusen Air, Inc., 466 F.2d 220, 226 (6th Cir. 1972) wrote:

"An essential element of such 'fairness' in our society has always been that a person is not asked to bear a special burden (such as defending in a foreign forum) unless he has done something in a purposeful manner or with such knowledge as to make his deeds the equivalent of purposeful action. The Hanson v. Denckla requirement is simply designed to avoid the situation where the 'unilateral activity' of the plaintiff can drag an unsuspecting and unwilling defendant into a foreign forum. See Hanson v. Denckla, 357 U.S. at 253, 78 S.Ct. 1228."

In light of the particular facts of this products liability action against the manufacturer of the allegedly defective product, jurisdiction in the State of Rhode Island is proper. The fact that the defendant alleges that it does not advertise or solicit business in Rhode Island does not prevent this Court from asserting jurisdiction where in the ordinary course of its business the defendant voluntarily, knowingly, and intentionally ships equipment to the State of Rhode Island for use therein. However, as with every case involving the asser-

3. Several federal decisions concur in this reasoning. Liberty Mutual Insurance Co. v. American Pecco Corporation, *supra*; Jones Enterprises, Inc. v. Atlas Service Corporation, *supra*; LTM Corporation et al. v. Edward M. Livingston and Sons, Inc., 339 F. Supp. 1270 (E.D.Pa.1972); Rosen v. Savant Instruments, Inc., 264 F.Supp. 232 (E.D.N.Y.1967).

tion of jurisdiction over a foreign defendant, the particular facts presented must be analyzed to ensure that "traditional notions of fair play and substantial justice" are not offended.

The defendant's motion to dismiss is hereby denied.