**Allen J. WHITE**

v.

**SHILLER CHEMICALS, INC.**

**Civ. A. No. 5158.**

United States District Court,
D. Rhode Island.

Jan. 2, 1974.

Peter L. Kennedy, Providence, R. I., for plaintiff.

Milton Stanzler, Providence, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

This case involves an alleged breach of an employment contract by the defendant with the plaintiff, a Rhode Island resident, and is presently before this Court on defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b) for lack of in personam jurisdiction, or, in the alternative, to transfer the action to New York, or stay these proceedings pending the outcome of an action in progress in the state court in New York. Defendant is incorporated under the laws of the State of Delaware and has as its principal place of business Yatesville, Pennsylvania. Jurisdiction is alleged upon diversity of citizenship and an amount in controversy exceeding $10,000.

### FACTS

On December 15, 1972, the plaintiff and the defendant entered into a five year employment contract signed by the

plaintiff in Rhode Island and authorized by the defendant through a telephone conference between Rhode Island, Pennsylvania, and New York. At a hearing before this Court for the purpose of determining jurisdiction, plaintiff testified that this contract was entered into at the initiation of officers of the defendant corporation. While the parties are in disagreement as to the facts necessary to establish the location of the execution of the contract, both sides agree that by its terms, the employment agreement is to be construed and interpreted according to the laws of the State of New York. According to the contract, plaintiff was to advise the company on financial matters, stockholder relations, and the preparation and/or editing of communications to stockholders and the financial community. Although the majority of these duties were to be performed in Rhode Island, they did not relate specifically to Rhode Island residents, nor were they designed or intended primarily for the purpose of increasing defendant's business in the state. Finally, plaintiff's services were expressly designated as part-time and his salary to be no less than $5,000 per year.

Standing alone the employment contract, which is at the heart of this case, is not sufficient to subject the defendant to the jurisdiction of the State of Rhode Island, therefore, discussion of the defendant's other contacts with the state is necessary. Defendant is in the business of manufacturing and selling adhesives, inks, and solvents and alleges that it purchases no raw products from this state, does no manufacturing here, maintains no office, bank account, telephone listing, or sales representative here, and does no advertising here. In fact, defendant asserts that it does 95% of its business in three other states and has only one customer in Rhode Island who accounts for less than 4% of its total annual sales. The dollar amount of the defendant's business in Rhode Island amounted to $3,246 in 1971, $8,432 in 1972, and $4,380 in 1973. Furthermore, defendant claims that its sole contact with this client is by mail and that its products are transported solely by independent carrier. On the other hand, plaintiff asserts that at the time the former President of the defendant company Morris Shiller visited Rhode Island in connection with a 1969 underwriting agreement between the defendant and A. J. White, Carlotti & Company, he also visited potential customers. The plaintiff also testified that the executive vice-president of the defendant company, Stanley Gould, visited the state in 1972 and while here saw its Rhode Island client concerning sales and the collection of money.

In addition to the employment contract and defendant's product sales in Rhode Island, defendant has previously sold its stock in Rhode Island. In 1969 an underwriting agreement was executed between the defendant and the A. J. White, Carlotti & Company of Rhode Island at the initiation of the defendant through its corporate counsel for the sale of 150,000 shares of its stock. As a result, approximately 50% of the stock issue contemplated by this agreement worth about $150,000 was sold to 60 Rhode Island residents. This agreement was effective for about only 60 days and not renewed. During this short period, the defendant maintained an escrow account in a Rhode Island bank, but does not do so any longer. Thereafter, the relationship between the underwriter and the defendant ceased. Nonetheless, the plaintiff continued in contact with the defendant from 1969 to 1972 for the purpose of acting as a consultant for financial matters and stockholder relations and became a director in the defendant company.

## CONCLUSIONS OF LAW

The limitations on in personam jurisdiction over a nonresident corporation are twofold requiring the establishment of "minimum contacts" by the non-resident in accordance with both federal constitutional and state statutory limitations. Westphal v. Stone Manufacturing Company, 305 F.Supp. 1187,

1190 (D.R.I.1970). The initial issue revolves around state law. Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963). It has consistently been held that the Rhode Island "long arm statute," § 9–5–33, R.I.G.L. (1956), permits the exercise of jurisdiction over foreign corporations up to the constitutional limit. Conn v. ITT Aetna Finance Co., 105 R.I. 397, 252 A.2d 184 (1969); DelSesto v. Trans World Airlines, Inc., 201 F.Supp. 879 (D.R.I. 1962); Forsythe v. Cohen, 305 F.Supp. 1194, 1196 (D.R.I.1969). Therefore, the critical inquiry becomes whether the state's jurisdictional assertion offends the due process requirements of the Fourteenth Amendment. The general test is clear. Where a foreign corporation establishes certain minimum contacts within the forum state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice," International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws," Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), no constitutional bar to the assertion of jurisdiction exists.

■ This inquiry has recently been further refined. As this Court wrote in Riverhouse Publishing Co. v. Porter, 287 F.Supp. 1, 9 (D.R.I.1969):

". . . the mere solicitation of business in this state by salesmen of the foreign corporation does not subject it to the jurisdiction of this court. It is the quality and nature of the activity in Rhode Island which the court finds significant."

However, the requisite quality and quantity of contacts necessary for jurisdiction cannot be worked out by any formula but must be determined with reference to the facts of a particular case. Westphal v. Stone Manufacturing Company, supra, Riverhouse Publishing Co.

v. Porter, supra. In Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079 (1st Cir. 1973), also an action based upon breach of contract, the court concluded that the following factors must be considered:

". . . the nature and purpose of the contacts, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum, and the convenience and fairness to the parties. . . ." Id. at 1083.

■ This Court has granted jurisdiction in Scott Brass, Inc. v. Wire and Metal Specialties Corp., 344 F.Supp. 711 (D.R.I.1972) and Leesona Corp. v. Concordia Mfg. Co., 312 F.Supp. 392 (D.R.I.1970) after a finding of "substantial business activity." Additionally, in Scott Brass, Inc., this Court found that the business relationship there involved "a complicated agreement . . . over a substantial period of time." In the instant case, the quantity of defendant's products sold and delivered to Rhode Island is far less than in either of the above two cases. Moreover, the plaintiff in this lawsuit has no relation to defendant's products, nor is the contract in question at all related to the sale of defendant's product line in Rhode Island. Thus, while this Court recognizes that the due process requirement may be met when the quantity of a defendant's business activity falls below that found in Scott Brass, Inc., supra, or Leesona Corp., supra, such is not the case where the lawsuit bears no relation to such activity. The plaintiff correctly contends that this Court must in making its jurisdictional decision consider defendant's dollar amount of business in Rhode Island as well as the percentage of its Rhode Island business as against its total corporate sales. Levin v. Joint Commission on Accreditation of Hospitals, 122 U.S.App.D.C. 383, 354 F.2d 515 (1965); Harco v. Ithaca Gun Co., 309 F.Supp. 585 (D.Utah 1969). However, defendant's total sales to Rhode Island for the three-year period including 1973 amounts to only $16,000 and there is no

evidence on the record to show that defendant vigorously solicits business in Rhode Island or regularly carries on other sales related activities in the state. See, Samson Cordage Works v. Wellington Puritan Mills, Inc., 303 F.Supp. 155 (D.R.I.1969).

While it is true that under the contract in question, plaintiff was to perform the majority of his duties while in Rhode Island, several factors demonstrate that this contract is not sufficient for purposes of jurisdiction. First, plaintiff's duties under the contract in no way related to the defendant's activity within Rhode Island, but rather involved general financial considerations relevant to the broad functioning of the corporation as a whole. Second, plaintiff's duties were expressly designated as "part-time" and limited so as not to interfere with the continued operation of his present business.

■ Finally, plaintiff asserts that the 1969 underwriting agreement, when seen in conjunction with the defendant's other Rhode Island contacts, overcomes any constitutional quandaries. While it has been held that the acts of a corporation related solely to its internal financing and/or corporate structural powers as distinguished from acts in furtherance of its stated corporate purposes or goals should not be considered in determining minimum contacts, Wilensky v. Standard Beryllium Corp., 228 F.Supp. 703 (D.Mass.1964), and that ownership of stock in a foreign corporation by residents of the forum state does not render the corporation subject to the state's jurisdiction, Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S. Ct. 250, 69 L.Ed. 634 (1925); In Re Puerto Rico Air Disaster Litigation, 340 F.Supp. 492 (D.P.R.1972), the better rule appears to be that affirmatively solicited, authorized transactions growing out of the sale of stock within the forum state should be considered a factor in weighing minimum contacts. Sampson-Miller Associated Companies, Inc. v.

Washington Homes, Inc., 303 F.Supp. 739 (W.D.Pa.1969); Kappus v. Western Hills Oil, Inc., 24 F.R.D. 123 (E.D.Wis. 1959); Perkins v. Benguet Consolidated Mining Co., 88 Ohio App. 118, 95 N.E.2d 5, aff'd 155 Ohio St. 116, 98 N.E.2d 33, vacated on other grounds 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, reh. denied 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332. Nonetheless, the stock sale, although involving a substantial amount of money, took place solely within a 60-day period, a full three years before the employment contract in question, and is unrelated to the subject matter of the instant action except that the plaintiff here also was a member of the underwriting firm.

■ Therefore, this Court concludes that defendant's contacts with the State of Rhode Island when taken as a whole are insufficient to satisfy the constitutional requirements for jurisdiction herein. While the hardship caused to this plaintiff by the dismissal of his action is noted, Delaware and Pennsylvania are clearly available to him as proper forums.

The defendant's motion to dismiss be and is hereby granted.[1]

---

1. Cf., Burgher v. West States Air, Inc., C.A.No.5061 (D.R.I. December 1973).