330 A.2d 804.

THE TRUSTEES OF THE SHEPPARD AND ENOCH PRATT HOSPITAL vs. DOREEN SMITH.

JANUARY 14, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This civil action seeks to enforce a foreign judgment. The plaintiff is a hospital that is located in Baltimore, Maryland. The defendant is a resident of Pawtucket, Rhode Island. On March 13, 1972, a default judgment in excess of $6,600 was entered in the Circuit Court for Baltimore County against the defendant. This sum represented money owed the hospital for the care and treatment of the defendant's minor son. The judgment was forwarded here for collection. The defendant is before us after a justice of the Superior Court had granted the plaintiff's motion for summary judgment.

Jurisdiction was initially asserted on defendant through plaintiff's use of Maryland's Long-Arm Statute. Notice of the pendency of this suit was furnished defendant. She made no effort to answer the case. When the litigation traveled to Rhode Island, plaintiff made a motion for summary judgment. In support of this motion, plaintiff presented duly authenticated copies of the judgment entered in Maryland, plus an affidavit from a hospital official telling of the circumstances that led to the Maryland judgment. The defendant filed a counteraffidavit which complained about the care given her son and explained that

when the son was admitted, there was an understanding that after her initial payment of $1,600 the hospital, knowing of her limited income, would look to Blue Cross for any further payments, and that Blue Cross "apparently" refused to pay the balance owed the hospital.

There are four basic principles which are applicable to the case at bar. It is fundamental (1) that the United States Constitution requires that each state give full faith and credit to a foreign judgment or decree; (2) that the due process provisions of the fourteenth amendment limit the full faith and credit proviso to the extent that each state when being asked to enforce a judgment of another state may make an inquiry as to whether the out-of-state court had jurisdiction over the parties and the subject matter of the controversy; (3) a litigant who opposes a motion for summary judgment must establish the existence of a dispute as to the existence of "material fact"; and (4) the existence of such a controversy is to be ascertained not from the briefs or pleadings but from the affidavits, answers to interrogatories, and other similar documents.

The defendant concedes the validity of these four propositions of law but states that the Maryland Long-Arm Statute is not applicable to her. We have within recent times written about the contemporary "minimum contacts" view of jurisdiction that allows a court to subject a nonresident defendant to a binding in personam judgment if the out-of-stater's contacts with the forum state are such that the suit does not offend traditional notions of fair play and substantial justice. *Lucini* v. *Mayhew,* 113 R. I. 641, 324 A.2d 663 (1974); *Conn* v. *ITT Aetna Fin. Co.,* 105 R. I. 397, 252 A.2d 184 (1969). In both these cases we refer to the trilogy of holdings by the United States Supreme Court which serves as a benchmark for considering the due process aspects of any particular long-

arm statute. The trilogy consists of *International Shoe Co.* v. *Washington,* 326 U. S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee* v. *International Life Ins. Co.,* 355 U. S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson* v. *Denckla,* 357 U. S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The defendant acknowledges today's trend toward an expanded exercise of in personam jurisdiction by state courts, but urges the view that a long-arm statute can never be constitutionally applied to "natural persons," such as her, whose only contact is a contract for services which results in no monetary gain to the nonresident. She argues that the Supreme Court's imprimatur was given in *McGee* and *International Shoe Co.* only because they involved corporate defendants whose out-of-state transactions were profit motivated. We cannot agree.

We would first note that the Supreme Court in *McGee* at 222, 78 S.Ct. at 201, 2 L.Ed.2d at 226, spoke of the modern tendency "* * * toward expanding the permissible scope of state jurisdiction over foreign corporations and other *nonresidents.*" (emphasis added) In fact, *McGee* stands for the proposition that a single act having impact in and connection with the forum state can satisfy the minimum-contact test of *International Shoe Co.* The great amount of judicial energy that has been and is being expended in determining controversies involving the respective long-arm statutes of the various jurisdictions is a graphic manifestation of the courts' concern for the due process rights of the one being sued. The fourteenth amendment states that a state shall not deprive "any person of life, liberty, or property, without due process of law." We do not believe that defendant could seriously contend that "due process" is to be accorded only to corporations. We would emphasize that the Court in *International Shoe Co.* based its conclusion that certain mini-

mum contacts with the forum state were compatible with the requisite due process on a number of cases including *Milliken* v. *Meyer,* 311 U. S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); *Blackmer* v. *United States,* 284 U. S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932); *Hess* v. *Pawloski,* 274 U. S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927),[1] all of which concern individuals who were named defendants. The argument being made here by defendant has been classified as distinction without a difference because there is no logical reason why jurisdiction should not attach to a natural person as it would to a corporation whose activities within the forum state are identical. *San Juan Hotel Corp.* v. *Lefkowitz,* 277 F.Supp. 28 (D.P.R. 1967). Other courts have applied the rationale of *International Shoe Co.* and *McGee* to individuals as well as to corporate entities. *Hamilton Nat'l Bank* v. *Russell,* 261 F.Supp. 145 (E.D. Tenn. 1966); *Owens* v. *Superior Ct.,* 52 Cal.2d 822, 345 P.2d 921 (1959); *Van Wagenberg* v. *Van Wagenberg,* 241 Md. 154, 215 A.2d 812 *cert. denied,* 385 U. S. 833, 87 S.Ct. 73, 17 L.Ed.2d 68 (1966); *Leeper* v. *Leeper,* 114 N. H. 294, 319 A.2d 626 (1974); *J. W. Sparks &Co.* v. *Gallos,* 47 N. J. 295, 220 A.2d 673 (1966); *contra, Allied Fin. Co.* v. *Prosser,* 103 Ga. App. 538, 119 S.E.2d 813 (1961); *see also Note, The Virginia "Long Arm" Statute,* 51 Va. L. Rev. 719, 729 (1965); Annot., 27 A.L.R. 3d 397, §2(d) (1969).

The pertinent Maryland statute was Md. Ann. Code

[1]The defendant relies on *Hess* v. *Pawloski,* 274 U. S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), for contention that the minimum-contact theory cannot be applied to an individual who is being sued because of a breach of contract. While it is clear that Pawloski was an individual who had been sued in tort, the underlying rationale of the case was that the defendant's operation of an automobile upon the highways of the forum state established the requisite contact that satisfied due process and gave a justification for the statutory appointment of the registrar of motor vehicles as the out-of-state motorist's agent to receive service of process.

art. 75, §§94 and 96 (1969).[2] A cursory glance at its relevant portions makes it crystal clear that Maryland seeks to assert a personal jurisdiction over a "person" when the cause of action arises from him or his agent "transacting any business" in Maryland. "Person" is specifically defined as including an individual, his executor, administrator, or other personal representative. The Maryland Court of Appeals has ruled that "transacting any business" is not limited to an act of commerce or transaction for profit but includes other endeavors which constitute a purposeful activity within the state. *Novack* v. *National Hot Rod Ass'n,* 247 Md. 350, 231 A.2d 22 (1967); *Van Wagenberg* v. *Van Wagenberg, supra.*

In *Conn* v. *ITT Aetna Fin. Co., supra,* it was pointed out that the determination of the minimum contacts that will satisfy the requirements of due process depends upon the facts of each particular case. Whether the facts relating to the defendant's contacts with the plaintiff hospital can be equated with the "business" transactions contemplated by the statute[3] is a complete mystery. There

---

[2]In 1973 the Maryland Legislature recodified some of the titles of its code. Sections 94 and 96 were repealed. The recodification omits any of the definitions formerly found in §94 but language somewhat similar to that found in §96 has been embodied in Md. Cts. and Jud. Pro. §6-103 (Michie 1974).

[3]The Maryland statute differs from our statute in that it lists a series of actions or areas of conduct which purport to give the court jurisdiction over an out-of-stater. The Rhode Island Legislature used a broad brush in that it made no attempt at specificity but rather declared that an out-of-state individual, corporation, partnership or executor having the "necessary minimum contacts" with Rhode Island shall be "amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States." General Laws 1956 (1969 Reenactment) §9-5-33.

is absolutely nothing in the record[4] that gives any meaningful description of when and how the defendant and the hospital communicated with each other. The duly certified record of the Maryland proceedings that was presented to the Superior Court gives rise to a presumption that the Baltimore court had jurisdiction over the parties and the cause. *Cook* v. *Cook*, 342 U. S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951); *Adam* v. *Saenger*, 303 U. S. 59, 58 S.Ct. 454, 82 L.Ed. 649 (1938). The counteraffidavit's assertions as to improper treatment and misunderstandings relative to reimbursement by Blue Cross were matters to be resolved in Maryland, not Rhode Island. Consequently, the trial justice in considering the motion for summary judgment had no alternative but to honor the Maryland judgment.

The defendant's appeal is denied and dismissed.

*Orlando A. Andreoni,* for plaintiffs.

*Moses Kando,* for defendant.

---

[4]In the statement of facts contained in the brief submitted to us by the defendant, it is alleged that she "admitted her son to the [hospital]" and being dissatisfied with the treatment "removed her son from the hospital and returned him to the family residence in Rhode Island." We cannot tell from this statement whether Mrs. Smith actually traveled to Maryland so that her son could be hospitalized there.