**ROGER WILLIAMS GENERAL HOSPITAL**

v.

**FALL RIVER TRUST COMPANY.**

No. 78–365–Appeal.

Supreme Court of Rhode Island.

Jan. 6, 1981.

Carroll, Kelly & Murphy, Dennis S. Baluch, Providence, for plaintiff.

Dolbashian, Chappell & Chace, Portsmouth, Francis T. Meagher, Fall River, Mass., for defendant.

OPINION

KELLEHER, Justice.

This is a civil action in which Roger Williams General Hospital (the hospital), a Rhode Island corporation, seeks to recover funds allegedly converted by a Massachusetts banking corporation, Fall River Trust Company (the bank). The issue before us is whether the bank had maintained, at the time this claim arose, the requisite minimum contact with the State of Rhode Island which would allow the Superior Court to exercise personal jurisdiction over the bank consistent with the requirements of the due process clause of the Fourteenth Amendment and G.L.1956 (1969 Reenactment) § 9–5–33.[1] The trial justice ruled "No," and for the reasons that follow we conclude that the hospital, in instituting this suit, failed to satisfy the requirements set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.[2]

The facts of the case may be briefly summarized. From February 1975 to October 1975 the hospital employed an individu-

[1]. General Laws 1956 (1969 Reenactment) § 9–5–33 provides in pertinent part:

"Every foreign corporation * * * that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such foreign corporations * * * amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States."

[2]. This controversy was presented to the trial justice by way of a motion to dismiss for lack of personal jurisdiction over the person. *See* Super.R.Civ.P. 12(b)(2). The contacts relied upon by the hospital and to which we have alluded are described in the bank's admissions to interrogatories propounded by the hospital. No other evidence was presented to the trial justice.

al by the name of Alan Rosen in the position of account manager. During this period Rosen converted $15,000 due the hospital to his own use by somehow cashing checks made payable to the hospital, apparently with forged endorsements, at the bank's offices.

It is elemental that a state court may exercise personal jurisdiction over a nonresident corporation provided there exist "minimum contacts" between the defendant corporation and the forum state. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A defendant's contacts with the forum state must be such that the exercise of personal jurisdiction does not "offend 'traditional notions of fair play and substantial justice.' " *Id.* at 316, 66 S.Ct. at 158, 90 L.Ed. at 102. Absent these "minimum contacts," the due process clause of the Fourteenth Amendment prohibits a state court from rendering a valid personal judgment against the defendant. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). As noted in *McGee*, the requirement of minimum contacts performs two important functions: it protects defendants from the inconvenience of litigating in distant forums, and it acts to ensure that states do not reach beyond the limits imposed on them by their status as equal sovereigns in the federal system.

We shall not indulge in a lengthy discourse on the history and purpose of long-arm statutes. Let it suffice to say that there has been a trend to liberalize the requirements that must be met in order for a state to exercise jurisdiction over foreign corporations and other nonresidents. *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132, *reh. denied*, 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978); *Trustees of the Sheppard and Enoch Pratt Hospital v. Smith*, 114 R.I. 181, 330 A.2d 804 (1975). Although the phrase "minimum contacts"

establishes a somewhat amorphous standard of review, we note that such ambiguity is born out of necessity. The determination of the minimum contacts that will satisfy the requirements of due process depends upon the facts of each particular case. *Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 252 A.2d 184 (1969). Such a case-by-case determination is mandated by the fact that developments in communication and transportation have resulted in an increasing nationalization, or, at the very least, regionalization of commerce and have increased the need for states to exercise jurisdiction over nonresidents. In response to these changes, the Supreme Court adopted and then rejected the more rigid jurisdictional requirements of "consent," "doing business," and "presence" as economic interdependence among the states created a common market. *See e. g. Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878).

Although the Court has never accepted the proposition that state lines are irrelevant for jurisdictional purposes, in its most recent pronouncement on the issue of minimum contacts, the Court emphasized that it would consider all "affiliating circumstances." [3] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). *World-Wide Volkswagen* was a products-liability action instituted in an Oklahoma state court by the purchasers of an Audi automobile. The plaintiffs in that action bought the car in New York while they were New York residents. As a result of a collision that occurred while they were driving through Oklahoma, they brought suit against the manufacturer, importer, distributor, and retailer, alleging defective design and placement of the Audi's gas tank and fuel system. The distributor and retailer sought a writ of prohibition in the Supreme Court of Oklahoma to prevent the trial judge (Wood-

**3.** Although an analysis of "affiliating circumstances" may be best left to others, we observe that the following factors should be considered in evaluating a defendant's contacts with the forum state: the state's interest in adjudicating the suit, the plaintiff's ability to choose a fo-

rum, and the interstate judicial system's interest in obtaining the efficient resolution of disputes. *See generally World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980).

son) from exercising in personam jurisdiction over them on the grounds that they lacked "minimal contacts" with the state of Oklahoma. In denying the writ, the Supreme Court of Oklahoma ruled that jurisdiction was authorized by Oklahoma's "Long Arm" statute. (Okl. Stat. Tit. 12; 1701.03(a)(4) (1961)). The court reasoned that "the product being sold and distributed by the petitioners is by its very design and purpose so mobile that petitioners can foresee its possible use in Oklahoma." *World-Wide Volkswagen Corp. v. Woodson*, Okl., 585 P.2d 351, 354 (1978).[4] Under this rationale, the state court concluded that sufficient minimum contacts had been established to allow the trial court to exercise personal jurisdiction over the petitioners.

■ The Supreme Court reversed by holding that foreseeability per se was not sufficient grounds to allow the exercise of in personam jurisdiction by a state court over a foreign corporation. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 295, 100 S.Ct. at 566, 62 L.Ed.2d at 500. The Court reaffirmed that the requirements of due process could only be met if the minimum-contacts test announced in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), was satisfied. While acknowledging that this test had been liberalized in the years since the test had been announced in *International Shoe*, the Court cautioned that the territorial limitation of a state court was still a relevant consideration for due-process purposes. Hence, the due process clause prohibits the exercise of personal jurisdiction over a defendant with which "the state has no contacts, ties, or relations." *International Shoe Co. v. Washington*, 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104. This prohibition stands "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the

forum State is the most convenient location for litigation * * *." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 494, 100 S.Ct. at 565, 62 L.Ed.2d at 499–500.

The only issue in this case, then, is, did the bank purposefully avail itself of the privilege of conducting activities within the state, thereby invoking the benefits and protections of the laws of Rhode Island, together with the concomitant obligation. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). After perusing the record in this case, it seems readily apparent that the bank did not conduct activities within the state during the relevant period.

■ The hospital's primary argument in support of its contention that the bank had maintained minimum contacts with Rhode Island is the fact that the bank advertised its services through the facilities of Channel 12, a television station located in Rhode Island. Although this action clearly demonstrated that the bank intended to solicit the business of Rhode Island residents, the fact that such advertising ceased some four months prior to the hiring of Rosen was sufficient to terminate the contacts between Rhode Island and the bank. *Cf. Del-Sesto v. Trans World Airlines, Inc.*, 201 F.Supp. 879 (D.R.I.1962) (at time of service of process, the defendant was listed in the Providence telephone directory, travel agents in Rhode Island were authorized to make reservations on behalf of defendant, and defendant advertised on radio in Rhode Island); *Forsythe v. Cohen*, 305 F.Supp. 1194 (D.R.I.1969) (cause of action arose out of a contract made and executed in Rhode Island); *Scott Brass, Inc. v. Wire and Metal Specialties*, 344 F.Supp. 711 (D.R.I.1972) (contract between parties subject of litigation).

■ The hospital also suggests that minimum contacts may be established on the basis of the following undisputed facts: (1) the bank had customers who are residents of Rhode Island; (2) the Fall River

---

4. The court also noted that the petitioners derived substantial income from automobiles, some of which were driven in Oklahoma.

telephone directory in which the bank is listed is regularly distributed in the area of Rhode Island that borders the city of Fall River; and (3) the bank administers a trust that owns property located in this state. We hold that none of the above activities, taken individually or collectively, is sufficient to establish minimum contacts with Rhode Island under the facts of this case.

Of course, the outcome of this case would be entirely different were the above activities somehow related to the transactions giving rise to this suit. *Compare McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). However, we believe that on the record presented to the trial justice it would be offensive to "traditional notions of fair play" to exercise

jurisdiction over the bank when the alleged claim did not arise in Rhode Island and when the bank's main contact with Rhode Island was terminated over five months prior to the earliest point in time that a claim could have arisen.[5]

The hospital's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

---

**5.** In considering the affiliating circumstances that surround this action, we note that plaintiff has not presented any evidence to indicate that

it would be unable to pursue a remedy in the Massachusetts or federal judicial systems.