BEN'S MARINE SALES et al.

v.

SLEEK CRAFT BOATS et al.

No. 83–569–Appeal.

Supreme Court of Rhode Island.

Dec. 31, 1985.

Michael A. Kelly, Adler, Pollack & Sheehan, Providence, for plaintiff.

Samuel Miller/John F. Cuzzone, Jr., Quinn, Cuzzone & Geremia, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This is an appeal from an order granting a motion to dismiss for lack of jurisdiction over the person brought under Rule 12(b)(2) of the Superior Court Rules of Civil Procedure. The plaintiffs, who are seeking damages for breach of contract and warranties, false representation, and fraud and deceit, are a Rhode Island corporation and a Rhode Island resident. The defendants are a California corporation and a California resident. The trial justice ruled that the plaintiffs had failed to demonstrate that either defendant had any "real contacts, ties, or relations" with the State of Rhode Island.

We first provide a framework within which to examine the facts. As a general rule a plaintiff's allegations are sufficient to withstand a defendant's motion to dismiss a complaint for lack of jurisdiction if the allegations make out a prima facie case. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985); *Behagen v. Amateur Basketball Association of the United States*, 744 F.2d 731, 733 (10th Cir.1984); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981).

To make out a prima facie case of jurisdiction in Rhode Island, a plaintiff's allegations must satisfy the demands of G.L.1956 (1985 Reenactment) § 9–5–33, Rhode Island's "long-arm" statute. Section 9–5–33 requires that

> "[e]very foreign corporation, every individual not a resident of this state * * * that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island * * * in every case not contrary to the provisions of the constitution or laws of the United States."

Under this statute, Rhode Island courts can exercise jurisdiction over foreign defendants " 'up to the constitutional limitation[s].' " *Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 402, 252 A.2d 184, 186 (1969).

These limitations, and the policies behind them, are by now familiar. Due process requires that a nonresident defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). The requirement of minimum contacts "protects the defendant against the burdens of litigating in a distant or inconvenient forum" and ensures that "the States * * * do not reach out beyond [their] limits * * * as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980).

Subsequent to *International Shoe*, the permissible scope of state jurisdiction over foreign defendants was expanded as a result of the "increasing nationalization of commerce" and the greater ease with which a party could defend himself in a distant jurisdiction. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 224, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957); *Roger Williams General Hospital v. Fall River Trust Co.*, — R.I. —, —, 423

A.2d 1384, 1386 (1981). However, restrictions upon a state's exercise of jurisdiction over a nonresident defendant still exist. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283, 1298 (1958). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.; Roger Williams General Hospital v. Fall River Trust Co.*, — R.I. at ——, 423 A.2d at 1387. The defendant's conduct in the forum must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.

These principles can only serve as guidelines, however. Obviously, a determination as to the minimum contacts that will satisfy the requirements of due process will depend upon the facts of each particular case. *Roger Williams General Hospital v. Fall River Trust Co.*, — R.I. at ——, 423 A.2d at 1386.

It is well settled that in determining whether a plaintiff has sustained his burden when confronted with a motion to dismiss for lack of jurisdiction, a court may rely on affidavits and discovery to establish the jurisdictional facts and, in doing so, should consider such evidence in the light most favorable to the nonmoving party.[1] *Thompson v. Chrysler Motors Corp.*, 755 F.2d at 1165; *Behagen v. Amateur Basketball Association of the United States*, 744 F.2d at 733; *Marine Midland Bank, N.A. v. Miller*, 664 F.2d at 904. In addition to the complaint, the trial justice in the case at hand considered affidavits filed by both parties in support of their jurisdictional positions and defendants' answers to interrogatories and requests for production propounded by plaintiffs.

The contract at issue involves the sale by defendants Sleek Craft Boats by Nescher, Inc. (Sleek Craft), and allegedly by defendant Bruce Nescher, doing business as Sleek Craft Boats (Nescher), of a thirty-six-foot Commander, a boat in their manufacturing line, to plaintiffs Norman Bolotow (Bolotow) and Ben's Marine Sales, Inc. (Ben's Marine). According to plaintiffs, the boat did not conform to specifications; they sued for damages. Bolotow is a resident

1. This practice has been followed in Rhode Island courts, although the principle has not been expressly stated. *See Roger Williams General Hospital v. Fall River Trust Co.*, — R.I. ——, ——, 423 A.2d 1384, 1385 n. 2 (1981). However, in *Ewing v. Frank*, 103 R.I. 96, 234 A.2d 840 (1967), this court noted that "when parties submit material dehors the pleading in support of or opposition to a motion to dismiss under [R]ule 12(b) where the jurisdiction of the court to hear the matter is questioned, and such extraneous matters are considered by the court * * * the motion is automatically transformed into one for summary judgment under [R]ule 56." *Id.* at 97–98, 234 A.2d at 841. This observation is erroneous. *See generally,* 2A Moore, *Federal Practice* ¶ 12.09[3] at 2297 (2d ed. 1984); 5 Wright & Miller, *Federal Practice and Procedure:* Civil § 1366 at 676 (1969). However, whether the motion under consideration is one to dismiss for lack of jurisdiction or one for summary judgment, if there be a conflict as to material fact, all the evidence must be viewed in the light most favorable to the nonmoving party, as we endorse the principle set forth in the cases cited

above. *See also Rustigian v. Celona*, — R.I. ——, ——, 478 A.2d 187, 189 (1984).

We also note that when a Super.R.Civ.P. 12(b)(2) defense is raised, a court may, upon the application of a party, conduct a preliminary evidentiary hearing to resolve issues of credibility or disputed issues of fact, in addition to considering affidavits and discovery. Super.R. Civ.P. 12(d); 2A Moore, *Federal Practice* ¶ 12.16 at 2351; 5 Wright & Miller, *Federal Practice and Procedure:* Civil § 1374 at 715–16. Under such circumstances the plaintiff must establish that jurisdiction exists by a preponderance of the evidence. *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1271 (5th Cir.1983); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980). No such hearing was requested here; thus, the plaintiff had only to allege a prima facie case. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985); *Behagen v. Amateur Basketball Association of the United States*, 744 F.2d 731, 733 (10th Cir.1984); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d at 904.

of Rhode Island, and Ben's Marine is incorporated and doing business in Rhode Island. Sleek Craft is incorporated and doing business in California, and plaintiffs' complaint describes Nescher as a resident of California.

Bolotow and Ben's Marine allege the following facts. Early in 1980 Bolotow wrote to defendants in California inquiring about the Commander and requesting a catalog and price list. The defendants responded that they only sold through their established network of dealers, referred Bolotow to their dealer in Port Washington, New York, and enclosed a catalog but no price list. Ben's Marine next wrote to defendants in June of 1980 inquiring about the boat. The defendants responded that the Commander would be on display at the Chicago Boat Show, that they would be happy to demonstrate it in Los Angeles, and again stressed their preference to "work directly with you and not with the retail customer."

Bolotow alleges in his affidavit that he became a joint venturer with Ben's Marine for the purpose of selling boats from defendants' line. In September of 1980 he and two other representatives of Ben's Marine went to the Chicago Boat Show to see the boats. At that time Bolotow signed a purchase order for a thirty-six-foot Commander and paid defendants a deposit of $10,000. The purchase order was made out to Ben's Marine and was signed by Jim Foley (Foley), Sleek Craft's national sales manager.

In a letter dated November 5, 1980, Ben's Marine confirmed this order subject to several additional terms. The letter notified defendants that the Commander would be displayed in Rhode Island at a boat show at the Providence Civic Center beginning January 28, 1981, and requested that Sleek Craft agree to deliver the finished product in time for the show.[2] Ben's Marine also requested that the Commander

under construction be identified as "our property, subject only to the balance of the purchase price." Foley indicated his consent to these additional terms at the bottom of the letter on a line provided by Ben's Marine for that purpose.

The Commander was delivered to plaintiffs in Pawtucket, Rhode Island, on defendants' boat-carrier truck in January 1981, at which time plaintiffs paid defendants the balance of the purchase price, $45,275, with a check drawn on a Rhode Island bank.

During 1981 and 1982, defendants sent plaintiffs price lists, catalogs, and other information addressed to dealers and distributors. A letter to Bolotow from Foley dated November 13, 1981, enclosed brochures and dealer price lists, recommended suggested retail prices, and wished plaintiffs "Good luck in selling some Sleek Crafts."

The plaintiffs contend, on the basis of these allegations, that the delivery of the boat and payment of the balance of the purchase price in Rhode Island, as required by the contract, together with the solicitation of additional business by mailing catalogs into the state in 1981 and 1982, constitute contacts sufficient to meet the requirements of § 9–5–33.

Nescher states in his affidavit that he ceased doing business as Sleek Craft Boats as of June 19, 1980, when the corporation, Sleek Craft Boats by Nescher, Inc., was incorporated in the State of California and that he had neither sold nor participated in the sale of boats since then.

Sleek Craft, in the affidavits provided by John Berry (Berry), president, and Foley, agree that the unsolicited purchase order for the Commander was signed and the deposit paid in Chicago; that the boat was delivered to plaintiffs in Rhode Island by a Sleek Craft employee; and that plaintiffs paid the balance owed there. However,

---

**2.** An examination of exhibits presented by the litigants shows the Commander to be a well-appointed high-speed motorboat weighing 8,000 pounds, capable of maintaining cruising speed of 40 to 60 miles per hour.

Sleek Craft claims that it sold the Commander to Bolotow as a "buying customer," not as a joint venturer; that it never advertised or did any other business in Rhode Island; and that the catalogs and price lists at issue were mailed to plaintiffs at their request as part of a mailing list made up of inquiring dealers.

Sleek Craft and Nescher insist that all significant contacts occurred outside Rhode Island. They contend that according to §§ 2–401(1), 2–501(1)(b), and 2–502(1) of the Uniform Commercial Code, title to the boat passed to the plaintiffs in California upon identification to the contract, as expressly requested by plaintiffs. They further argue that delivery of the boat in Rhode Island was but "one isolated incident," insufficient to meet the requirements of § 9–5–33. They contend that in any event the motion to dismiss should be granted as far as Nescher is concerned since he was not doing business as Sleek Craft at the time of the purchase of the boat.

We first consider whether an "isolated incident," in particular the delivery of a manufacturer's product into the forum and payment for it there, in accordance with a contract entered into elsewhere, can satisfy the requirements of due process.

■ "When a cause of action arises from the defendant's contacts with the forum, less is required to support jurisdiction than when the cause of action is unrelated to those contacts." *Vencedor Manufacturing Co. v. Gougler Industries, Inc.*, 557 F.2d 886, 889 (1st Cir.1977); *Roger Williams General Hospital v. Fall River Trust Co.*, —— R.I. at ——, 423 A.2d at 1388. All that need be shown is a " 'relationship among the defendant, the forum, and the litigation.' " *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984). Here, plaintiffs' claim arose at the time of the delivery of the boat into Rhode Island. That delivery constituted the partial performance of the contract that is the subject matter of the litigation. This lesser standard therefore applies.

A single contract formed the basis for the exercise of personal jurisdiction in *McGee v. International Life Insurance Co.*, 355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226. In *McGee* the plaintiff sued a Texas life-insurance company in California. The Texas company had mailed a reinsurance certificate to the policyholder in California, having earlier assumed the obligations of the Arizona company with whom the policyholder was originally insured. The policyholder accepted the offer to reinsure him in California, mailed the required premiums from California, and was a resident of California when he died. The United States Supreme Court held that "[i]t is sufficient for purposes of due process that [a] suit [is] based on a contract which [has] substantial connection with [the forum] State" and that the delivery of the contract, the payment of the premiums, and the residence of the policyholder at the time of his death in California constituted such connections. *Id.*

This court has interpreted *McGee* as standing for the proposition that "a single act having impact in and connection with the forum state can satisfy the minimum-contact test of *International Shoe Co.*" *Trustees of the Sheppard and Enoch Pratt Hospital v. Smith*, 114 R.I. 181, 184, 330 A.2d 804, 806 (1975). In deciding whether to give full faith and credit to a Maryland judgment over a Rhode Island defendant, the court in *Enoch Pratt* ruled that the Maryland long-arm statute could constitutionally be applied to obtain jurisdiction over an out-of-state defendant even though that person's only contact with the state was a service contract under which a Maryland hospital provided care and treatment for the defendant's son. *Id.* at 184, 330 A.2d at 806.

The facts in *Enoch Pratt* were sparse. It was known that the care and treatment were provided in a Maryland hospital, but there was no way to tell from the record "when and how the defendant and the hospital communicated with each other" to judge whether the plaintiff's contacts with

the hospital satisfied the "transacting business" requirements of the Maryland long-arm statute in question. Nonetheless, the court acknowledged that the certified record of the Maryland proceedings gave rise to the presumption that the Maryland court had jurisdiction under the statute, ruled that the exercise of that jurisdiction satisfied the requirements of due process, and granted full faith and credit to the Maryland judgment. *Id.* at 186–87, 330 A.2d at 807.

The Supreme Court has acknowledged that when a defendant "delivers its products into the stream of commerce" with the expectation that they will reach the forum state, the forum's court may assert jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297–98, 100 S.Ct. at 567, 62 L.Ed.2d at 502. *World-Wide Volkswagen* was a product-liability case. Accordingly, courts have frequently held that the direct or indirect shipment of goods into the forum by a nonresident defendant with knowledge of their destination is sufficient contact upon which to base jurisdiction where the plaintiff was injured as the result of such shipment, even when that shipment constituted the defendant's only contact with the forum.[3]

Similarly, the United States District Court for the District of Rhode Island in *Atlantic Tubing & Rubber Co. v. International Engraving Co.*, 364 F.Supp. 787 (D.R.I.1973), applying Rhode Island law, held that the voluntary and intentional shipment by a nonresident manufacturer of equipment into Rhode Island—to be used in Rhode Island—was sufficient to permit the court to exercise its jurisdiction over that

defendant even though the defendant did not advertise or solicit business there. *Id.* at 793. In *Atlantic Tubing* the defendant contracted, upon the plaintiff's unsolicited telephone request, to manufacture and sell an embossing roll to the plaintiff for use in the plaintiff's Rhode Island plant. The defendant shipped the embossing roll to the plaintiff, and it subsequently failed, causing the plaintiff extensive damage. The plaintiff brought a product-liability action based on negligence, breach of warranty, and breach of contract. Subsequent to the transaction in question, the defendant had shipped additional equipment to the plaintiff in Rhode Island according to several later contracts. *Id.* at 788.

Equating the defendant's awareness of the destination of his equipment and the subsequent shipment of that equipment into Rhode Island in the case at hand with the purposeful action required by *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298, the court held jurisdiction permissible. *Atlantic Tubing & Rubber Co. v. International Engraving Co.*, 364 F.Supp. at 793. Although the court did take the defendant's additional shipments to the plaintiff into consideration in reaching its decision, the court used that factor to emphasize the defendant's awareness of the destination of its product, rather than as an additional substantial contact. *Id.*

The Court of Appeals for the First Circuit has taken the position that the rationale as to minimum contacts in tort cases should be extended to contract cases. In *Vencedor Manufacturing Co. v. Gougler*

---

**3.** *See Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1172 (5th Cir.1985) (the deliberate sale and shipment of a master cylinder into the forum by nonresident defendant for use in plaintiffs' vehicle constitutes purposeful availment to extent that plaintiffs contend that accident was caused by defect in the master cylinder); *Hedrick v. Diako Shoji Co., Ltd., Osaka*, 715 F.2d 1355, 1358 (9th Cir.1983) (production of splice for ocean-going vessels with knowledge that it was destined for vessels serving United States ports, including port in forum state, sufficient for exercise of personal jurisdiction where

splice caused injury); *Swank, Inc. v. Carmona*, 603 F.Supp. 1092, 1094, 1098–99 (D.P.R.1985) (where third-party-defendant manufacturer of belt buckles knew or should have known that its product, attached to belts, was being shipped into the forum by defendant belt manufacturer, jurisdiction permissible in suit for trademark infringement and unfair competition); *Vecchio v. S & T Mfg. Co.*, 601 F.Supp. 55, 57 (D.E.D.N.Y. 1984) (where nonresident manufacturer sold workstands with full notice that they were ordered for use in forum, due-process requirements satisfied in product-liability suit).

*Industries, Inc.*, 557 F.2d 886 (1st Cir. 1977), the court rejected the notion that the number of minimum contacts needed for an appropriate assumption of jurisdiction depends upon the character of the suit. In expounding its position, the court observed:

"We see no rational or neutral principle that makes inapplicable the tort cases we have relied upon. A consumer whose lawnmower falls to pieces, gashing his foot, wants personal injury damages and the price of a new lawnmower. If the manufacturer is a non-resident, the consumer should not be permitted to seek damages at home while he is forced to litigate in a distant forum in order to get his lawnmower replaced. * * * To vary the minimum contacts needed for jurisdiction according to the character of the suit would lead plaintiffs into disingenuous manipulation of their pleadings, and it would plunge the courts into ever more difficult refinements of the categories." *Id.* at 894.

In *Vencedor*, although the contacts were more substantial than those in the case at hand,[4] the court relied heavily upon the defendant's shipment of goods into the forum to find jurisdiction. Citing the requirement expressed in *Hanson v. Denckla* "that the defendant's contacts with the forum be voluntary in some meaningful sense," the court held that standard met "when a manufacturer sends his products directly into the forum, at least when he does so with some regularity. He knows that flaws in his work will have consequences in the forum, and it is within his power to refuse to deal with customers there." 557 F.2d at 891–92.

The Vermont Supreme Court in *Bard Building Supply Co. v. United Foam Corp.*, 137 Vt. 125, 400 A.2d 1023 (1979), a case almost exactly on all fours with the issue now before us, subscribed to the reasoning expressed in *Vencedor*, emphasizing that there is "no reason why more substantial contacts should be required to support jurisdiction in contract matters than in tort." 137 Vt. at 129, 400 A.2d at 1025. In *Bard* the Vermont plaintiff contacted the defendant in Pennsylvania by phone about a purchase of foam. The defendant accepted the order in Pennsylvania and shipped the goods in question c.o.d. to the plaintiff in Vermont. The defendant had no other contacts with Vermont. The suit sought damages for claimed defects in the flame-retardant characteristics of the foam. *Id.* at 127, 400 A.2d at 1024. The court found that the sending of the c.o.d. shipment into Vermont was a "purposeful commercial act," that collection of the purchase price in Vermont was a "prime element of the defendant's intent," and that the carrier was the defendant's agent for delivering the goods and collecting the price. *Id.* at 128, 400 A.2d at 1025. The court held that as the shipment was direct and intentional and "its form required, and received, action in Vermont by the carrier as defendant's agent," the minimum contacts required for an in-personam judgment were satisfied. *Id.*

Admittedly, Vermont's neighbor, in *Weld Power Industries, Inc. v. C.S.I. Technologies, Inc.*, 124 N.H. 121, 467 A.2d 568 (1983), concluded that merely entering into a contract with a resident, in which the sole contact with the forum was that it would be the situs for reception of the goods sold,

**4.** In *Vencedor* the plaintiff had ordered nickel augers for one of its extruders, and the defendant had supplied chrome augers without notifying the plaintiff of the substitution. The substituted augers failed, causing substantial damage, for which the plaintiff sued. The defendant had shipped other extruder parts to the plaintiff before the incident occurred, had allowed credit on all purchases, frequently filed a shipper's export declaration specifying Puerto Rico as the destination, made sales on credit to five other Puerto Rican firms, and generated its sales of spare parts by mailing catalogs into the state together with its extruders. *Vencedor Mfg. Co. v. Gougler Industries, Inc.*, 557 F.2d 886, 888–89 (1st Cir.1977). The court noted that these contacts were more than those required to meet the test of "purposeful availment." *Id.* at 892. It also indicated that it did not have to reach the issue of whether a single shipment would constitute sufficient contacts since it was presented with more. *Id.* at 893.

would not support personal jurisdiction. *Id.* at 125, 467 A.2d at 570. In *Weld,* however, no payment was made or was to be made in New Hampshire. According to the contract, the sale was to be consummated by a letter of credit obtained through a Boston bank, and the sale was to be governed by California law. *Id.* at 124, 467 A.2d at 569. The contacts thus were significantly fewer than those presented by plaintiffs here.

We would emphasize that Sleek Craft had sufficient contacts in Rhode Island to subject it fairly to suit for breach of contract here. Sleek Craft did not merely "deliver its products into the stream of commerce." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297–98, 100 S.Ct. at 567, 62 L.Ed.2d at 502. It knowingly and voluntarily delivered the Commander directly to Rhode Island. Furthermore, it contracted to do so at the Chicago Boat Show, where it had deliberately displayed its products so that it could reach a wider market, a market that already extended to the east coast. As the Supreme Court in *World-Wide Volkswagen Corp.* noted:

> "[I]f the sale of a product of a manufacturer * * * is not simply an isolated occurrence, but arises from the efforts of the manufacturer * * * to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States * * *." *Id.* at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.

The sale of the Commander arose from such an effort on the part of Sleek Craft. Sleek Craft should reasonably have expected that it might be "haled into court" far from its home base in California as a result of such activity. *Id.*

Furthermore, Sleek Craft accepted payment for the boat in Rhode Island, as per its agreement with plaintiffs. As we have seen, the payment of premiums by the plaintiff to the defendant from the forum was considered a significant contact in *McGee v. International Life Insurance Co.,* 355 U.S. at 224, 78 S.Ct. at 201, 2 L.Ed.2d at 226. *See also E.F. Hutton & Co. v. Tourism and Development Corp.,* 455 F.Supp. 981, 986 (D.R.I.1978) (payment of finder's fee check from Rhode Island to Florida as required by letter of commitment considered meaningful contact); *Cove-Craft Industries, Inc. v. B.L. Armstrong Co., Ltd.,* 120 N.H. 195, 200, 412 A.2d 1028, 1031 (1980); *Bard Building Supply Co. v. United Foam Corp.,* 137 Vt. at 128, 400 A.2d at 1025.

By allowing plaintiffs to wait until the boat was delivered before full payment was made, Sleek Craft "purposely availed" itself of the benefits of Rhode Island law. If plaintiffs had not paid their bill upon delivery, Sleek Craft could have sued in Rhode Island to collect either on the contract or to enforce a judgment obtained in California. *Vencedor Manufacturing Co. v. Gougler Industries, Inc.,* 557 F.2d at 892.

Sleek Craft also sent catalogs and price lists to plaintiffs encouraging additional sales. Noting that since *McGee,* solicitation in the forum has been considered purposeful availment, the court in *Vencedor* remarked: "Solicitation is not * * * limited to advertising. It is the affirmative seeking of business. Sending catalogues to a jurisdiction is a way of seeking business * * *." 557 F.2d at 891. *See also Hendrickson v. Reg O Co.,* 657 F.2d 9, 13, 15 (3d Cir.1981).

The defendants contend that plaintiffs were put on Sleek Craft's mailing list in response to their own request and that the subsequent mailing of catalogs to them should therefore be disregarded. Notwithstanding this admitted fact, defendants continued to supply information to plaintiffs and are responsible for it. Although such solicitation standing alone might not be sufficient to establish jurisdiction since the litigation at hand does not "arise from it," it is significant in this case as it contributes to the "totality of the contacts" between the forum and defendants. *West-*

*phal v. Stone Manufacturing Co.*, 305 F.Supp. 1187, 1193 (D.R.I.1969).

 Thus, although we find the reasoning set forth in *Vencedor* to be provocative and persuasive, we do not have to rely solely on delivery in this case. We find that Sleek Craft, a manufacturer involved in interstate sales of its product, knowingly, voluntarily, and deliberately delivered its product into Rhode Island and accepted payment for it here, as it had expressly contracted to do. The product did not conform to specifications, and this litigation ensued. Furthermore, Sleek Craft solicited business in this state by sending catalogs and price lists to plaintiffs. We hold that in these circumstances a relationship among defendant, the forum, and the litigation existed sufficient to justify the exercise of Rhode Island's jurisdiction over Sleek Craft. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at ——, 104 S.Ct. at 1872, 80 L.Ed.2d at 411. The order dismissing plaintiffs' complaint as it relates to Sleek Craft is therefore erroneous.[5]

 As far as defendant Nescher is concerned, "where [a] defendant's affidavit [in support of a motion to dismiss] sets out uncontradicted facts, those facts must be taken as true." *Weld Power Industries, Inc. v. C.S.I. Technologies, Inc.*, 124 N.H. at 123, 467 A.2d at 569. Nescher's uncontroverted affidavit states that he ceased doing business as Sleek Craft Boats on June 19, 1980. The contract at issue was entered into in late September 1980, and delivery of the boat was not made until January of 1981. According to the record, the only communication that could possibly have been sent by defendant Nescher to the plaintiffs prior to June 19, 1980, was a letter sent in response to Bolotow's initial inquiry. Such contact does not fulfill the requirements of § 9-5-33. The order dis-

missing the plaintiffs' complaint as it relates to Nescher is therefore correct.

Accordingly, the plaintiffs' appeal is sustained in part and denied in part. The judgment as it applies to Sleek Craft is vacated and as it applies to Nescher is affirmed, and the case is remanded to Superior Court for an entry of judgment in conformity with this opinion.

Chief Justice BEVILACQUA did not participate.

---

5. In these circumstances, we need not consider defendants' argument that according to the Uniform Commercial Code, title to the Commander passed to plaintiffs upon its identification to the contract. No matter when title passed, the contract still required for its completion that defendants deliver the boat to Rhode Island and that plaintiffs pay for it there. Since we have found sufficient contacts, the place where title passed is irrelevant.