**Sheilah I. CARRILLO**

v.

**German CARRILLO.**

**No. 84–502–Appeal.**

Supreme Court of Rhode Island.

April 1, 1987.

Michael V. Favicchio, Cranston, for plaintiff.

Anthony J. Bucci, Jr., Bucci, Bucci & Bucci, Providence, for defendant.

OPINION

KELLEHER, Justice.

This is an interstate tug of war that involves the Rhode Island Uniform Reciprocal Enforcement of Support Act (URESA), G.L.1956 (1981 Reenactment) chapter 11 of title 15, and the "minimum contacts" theory of jurisdiction. The litigants were married to each other on August 15, 1966. The marital knot was tied in Champaign, Illinois. The litigants are the parents of one child, a son, who is now in his twenties. Shortly after the birth of the son, the couple moved to Providence, Rhode Island, where the father attended Brown University. He received his degree in 1971, and the Carrillo clan made its way to Milwaukee, Wisconsin, where the father obtained employment as a professor at a well-known university. He continues to be a member of the faculty there.

Marital difficulties appeared on the horizon in 1975, whereupon the mother and the father went their separate ways. In March 1978 a Wisconsin Circuit Court granted the father's divorce petition and ordered the father to pay the mother monthly payments for support of the child in the amount of $174. Time marched on and three years later the Circuit Court increased the amount of support to $300.

Sometime thereafter, the mother and the child left Wisconsin and returned to Rhode Island. In early December 1981 the mother invoked the provisions of URESA. Her petition came before a Family Court master who found "a need for $676.00 monthly for one child of the [p]arties in addition to medical expenditures of $149,000.00 and in addition an on-going monthly medical need for the child of $830.00." All relevant documents were then transferred to Wisconsin, to the Circuit Court.

This effort apparently fell on deaf ears in Wisconsin. Resort to URESA was again made in early 1983. After a hearing before the master, an order was entered indicating a need of $422.50 plus medical ex-

penses. Once again the relevant documents were transmitted to Wisconsin, and this effort suffered the same fate as the earlier attempt.

In May 1984 the mother filed a petition in the Family Court seeking support from the husband for herself and the child, relying on the provisions of Rhode Island's long-arm statute, G.L.1956 (1969 Reenactment) § 9–5–33, and alleging that the husband had the necessary minimum contacts that would subject him to the jurisdiction of the Family Court. A witness subpoena was served upon the father at his Milwaukee address. He responded by filing an affidavit as well as a motion in which he challenged the Family Court's jurisdiction to consider the controversy and also explained that he could not attend a scheduled mid-May hearing because of his academic responsibilities. Enclosed with this affidavit was a letter in which the father's attorney filed a special appearance to challenge the jurisdiction of the Family Court. The attorney made it clear that his client would not submit to the jurisdiction of the Family Court until the jurisdictional issue had been resolved.

The master conducted a hearing in the absence of the father and subsequently ruled that by filing the affidavit he had waived the question of jurisdiction, additionally finding that there were sufficient contacts to confer jurisdiction on the Family Court. Appeal from this decision was heard by a Family Court justice in late June 1984. The trial justice granted the motion to dismiss because of a failure to effectuate personal service upon the father within the State of Rhode Island.

Before us the mother faults the trial justice, emphasizing that she and her son have ample Rhode Island contacts. She points to the substantial public benefits that both she and her son have received. She also claims that the father submitted to the Family Court's jurisdiction when he filed the affidavit in which he tried to show his own personal obligations.

The mother, in searching out "contacts," however, is looking at the wrong individual. She should be looking to the "contacts"

the father has had with the State of Rhode Island since he left here in the seventies and then traveled to Wisconsin. Nearly thirty years ago the Supreme Court, in *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283, 1298 (1958), when discussing the state's purported exercise of jurisdiction over a nonresident defendant, said that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." The purposeful-availment rationale was again emphasized in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985).

Recently, in *Ben's Marine Sales v. Sleek Craft Boats,* 502 A.2d 808, 809 (R.I.1985), another minimum-contacts case, we emphasized that due process requires that the minimum contacts that a nonresident defendant has with the forum must be such that a finding of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. We also emphasized that it is essential that there be a showing of some act by a defendant that would indicate a purposeful availment of the privilege of conducting activities within the State of Rhode Island. *Id.* at 810.

■ Applying these principles to the controversy now before us, it is clear that the trial justice quite properly ruled that petitioner's prior contacts with Rhode Island some years ago did not endow the Family Court with jurisdiction to consider the mother's complaints. The father's student days at Brown University occurred before he and the mother separated. Again it should be emphasized that the subject matter of this litigation—child-support payments—is presently being administered by the Wisconsin judicial system. In *Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), the California Supreme Court was faulted for holding an out-of-state father subject to the court's jurisdiction under the "purposeful availment" theory because of his acqui-

escence in having his daughter present in California during the school year and his payment of the travel expenses incurred by the daughter in traveling to California. We are convinced that in this controversy the father at no time has sought a "purposeful availment" of the benefits of the laws of the state. To consider his college years as a basis for asserting personal jurisdiction over unrelated actions arising in the future "would make a mockery of the limitations on state jurisdiction imposed by the Fourteenth Amendment." *Id.* at 93, 98 S.Ct. at 1697, 56 L.Ed.2d at 142.

■ The mother's argument that the father waived the jurisdictional issue by filing an affidavit showing his present needs ignores the provisions of the Family Court Rules of Practice allowing alternative pleading, specifically Rule 12(b), which in its relevant parts states that no defense is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. In fact, the father's counsel was quite conscious of the potential for a waiver of defense, filing a notice of special appearance with each pleading filed in this controversy.

The record clearly demonstrates that the trial justice made a meticulous analysis of the issues presented in this dispute and gave the litigants every opportunity to espouse their positions. On this record the trial justice had no choice. His grant of the motion to dismiss the petition because of the Family Court's lack of personal jurisdiction over the father cannot be faulted.

The mother's appeal is denied and dismissed. The judgment appealed from is affirmed.